OPINION
{¶ 1} C.W., the mother of J.W. (hereinafter "mother"), and L.E., the child's maternal grandmother (hereinafter "grandmother"), appeal from orders of the Franklin *Page 2 
County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, denying grandmother's motion to be joined as a party in this action and terminating mother's parental rights and placing J.W. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we vacate and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} On April 3, 2002, mother gave birth to a son, J.W.[1] At the time, mother was 14 years old. Doctors expected J.W. only to live weeks or months after his birth. He was born with dwarfism, a clubfoot, and multiple fractures. He was diagnosed with Osteogenesis Imperfecta Type II, or brittle bone syndrome. The syndrome prevents J.W.'s bones from calcifying correctly, thereby making them brittle. The hospital notified FCCS of the child's condition, and FCCS took custody of J.W. directly from the hospital. He has been in a foster home for the medically fragile ever since.
 {¶ 3} On July 7, 2003, FCCS filed a complaint seeking legal custody of J.W. Apparently, mother lived with grandmother in Columbus at this time. The complaint alleged that J.W. was a dependent child. It further alleged that grandmother had already failed a home study conducted by the Montgomery County Children Services ("MCCS"). That same day, a magistrate awarded FCCS temporary custody of J.W. pending a further hearing. The magistrate also awarded mother and grandmother up to three weekly supervised visits with J.W. and ordered FCCS to complete a home study. The magistrate held an adjudicatory hearing on August 13, 2003, at which the parties did not contest that J.W. should be adjudicated a dependent child. *Page 3 
 {¶ 4} On August 20, 2003, the trial court found J.W. to be a dependent child and awarded FCCS temporary custody. The trial court also adopted and approved a case plan to facilitate the reunification of J.W. with his family. The case plan required mother to provide for J.W.'s basic needs, to take parenting classes, to attend school, and to provide a safe and stable home. Both mother and grandmother visited with J.W. twice a week, but according to FCCS records, by the beginning of 2004, visits were less frequent. FCCS records also indicated that grandmother's home study was not approved because of her history with FCCS and MCCS, which reflected poor supervision, educational neglect, and the loss of utilities in her previous homes.[2]
 {¶ 5} On May 6, 2004, grandmother filed a motion seeking to be joined as a party to the custody proceeding. By this time, FCCS noted that visitation was not consistent, but it recommended more unsupervised visits, and noted that if those went well, overnight visits could follow. FCCS also noted that they were moving toward reunification with grandmother. On July 7, 2004, the magistrate held an annual review of J.W.'s custodial situation. The magistrate ordered that FCCS' temporary custody be extended for another six months. The magistrate delayed ruling on grandmother's motion but did appoint an attorney to represent her. Therefore, FCCS permitted some overnight visitation with grandmother, but FCCS was concerned that J.W. returned from those visits sick and dehydrated. The records also indicate that there were criminal charges pending against mother and two of grandmother's kids in 2004, and that mother had quit her job. *Page 4 
 {¶ 6} On December 30, 2004, FCCS requested permanent custody of J.W. pursuant to R.C. 2151.414. FCCS' records in April 2005 indicate that the agency had moved visitation back to its offices due to concerns about grandmother. FCCS noted that grandmother had an open case with the agency and that there were a number of people living at her house, raising a concern about her ability to supervise J.W.
 {¶ 7} On June 18, 2005, mother turned 18. At a pre-trial hearing on July 6, 2005, the magistrate noted that because mother was now 18, grandmother was no longer a mandatory party to the proceedings. See Juv.R. 2(Y) (defining "party" to include a parent of a child who is a parent of a child subject to juvenile court proceedings). By a judgment entry dated July 14, 2005, the trial court dismissed grandmother as a party to the proceedings. Grandmother did not appeal that judgment. On September 12, 2005, grandmother filed a motion seeking to become a party again to the custody action and requesting that the court award her custody of J.W. FCCS' records indicated that at this time, mother no longer lived with grandmother, but had moved in with a boyfriend. By April 2006, FCCS' records indicated that mother had tested positive for marijuana and cocaine and that she had given birth to another baby. There was also concern about her failure to attend school on a regular basis.
 {¶ 8} By the summer of 2006, J.W. was four years old. He received regular I.V. treatments to help his bones calcify. J.W. could not walk. He crawled to ambulate. His physical disabilities, however, did not affect his mental functioning. J.W. was, and remains, very intelligent and can communicate normally.
 {¶ 9} On July 25, 2006, the trial court held a hearing concerning FCCS' motion for permanent custody and grandmother's motion to be joined as a party and for legal *Page 5 
custody of J.W. On that same day, the guardian ad litem filed her report indicating that she could not make a recommendation for the child's placement until she heard testimony at the hearing. At the beginning of the hearing, the trial court addressed grandmother's motion to be added as a party. It was brought to the court's attention that grandmother had failed at least one home study and had a significant history with different children services agencies in Ohio concerning her five minor children (including mother). The trial court denied grandmother's motion to become a party in the case. At the end of the hearing, the guardian ad litem recommended that FCCS receive permanent custody, even though the guardian ad litem believed that mother loved J.W.
 {¶ 10} The trial court granted FCCS permanent custody of J.W. The trial court determined that no relatives were suitable for custody and that an award of permanent custody to FCCS was in the child's best interest. The trial court subsequently denied a motion for new trial filed by grandmother.
 {¶ 11} Mother appeals and assigns the following errors:
 [1] THERE IS INSUFFICIENT CREDIBLE EVIDENCE TO SUPPORT THE JUDGMENT OF THE TRIAL COURT WHICH IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 [2] APPELLANT WAS DEPRIVED THE EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 12} Grandmother also appeals and assigns the following errors:
 [1.] The trial court abused its discretion by removing maternal grandmother as a party and by overruling maternal grandmother's motion to be joined as a party and motion for custody.
 [2.] The trial court erred in granting permanent custody to Franklin County Children Services, because the agency failed to prove its case by clear and convincing evidence, because *Page 6 
there was insufficient evidence to support the trial court's decision, and because the decision was against the manifest weight of the evidence.
 [3.] The trial court's failure to join maternal grandmother as a party unconstitutionally deprived her of due process of law.
 [4.] The trial court erred to the prejudice of maternal grandmother when it failed to consider the wishes of the child, as required by O.R.C. Section 2151.414(D)(2).
 [5.] The trial court erred in ordering permanent commitment because O.R.C. Section 2151.414(B)(1)(d) is unconstitutional in that it creates an irrebuttable presumption of parental unfitness where a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve (12) or more months of a consecutive twenty-two (22) months period ending on or after March 18, 1999.
 [6.] The trial court erred by failing to appoint an attorney for maternal grandmother, who is in loco parentis with the child, as required by O.R.C. Section 2151.352.
 [7.] Appellant was prejudiced by ineffective assistance of counsel.
 [8.] The trial court erred in overruling L.E.'s motion for a new trial under O.R.C.P. 59.
 {¶ 13} In her first assignment of error, mother contends that the trial court's award of permanent custody is not supported by the evidence. We agree.
 {¶ 14} A decision to award permanent custody requires the trial court to take a two-step approach. In re G.B., Franklin App. No. 04AP-1024,2005-Ohio-3141, at ¶ 13. First, a trial court must find whether any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with *Page 7 
either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
R.C. 2151.414(B)(1).
 {¶ 15} In connection with this first step of the analysis, the trial court found, pursuant to R.C. 2151.414(B)(1)(a), that J.W. could not or should not be placed with his parents within a reasonable time. The trial court also found, pursuant to R.C. 2151.414(B)(1)(d), that he had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. The record supports that determination. J.W. entered the temporary custody of FCCS on August 13, 2003, the day he was adjudicated as a dependent child. FCCS filed its motion for permanent custody one and one-half years later, on December 30, 2004. Because the record supports the trial court's decision to proceed under R.C. 2151.414(B)(1)(d), the trial court did not need to determine whether the child can or should be placed with either parent after a reasonable time under R.C.2151.414(B)(1)(a). In re G.B., at ¶ 15; see, also, In re Lopez,166 Ohio App.3d 688, 2006-Ohio-2251, at ¶ 27-29.
 {¶ 16} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in *Page 8 
the child's best interest. Id. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985),18 Ohio St.3d 361, 368; Cross v. Ledford (1954), 161 Ohio St. 469.
 {¶ 17} In determining the best interest of a child, a trial court is required to consider all relevant factors including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D). The failure to consider each of these factors in reaching a determination concerning a child's best interest is prejudicial error. In re Wright, Franklin App. No. 04AP-435,2004-Ohio-4045, at ¶ 8.
 {¶ 18} Mother first claims that there is no evidence of whether J.W. is mature enough to express his wishes regarding custody and, if so, what his wishes are. We agree. It is reversible error to grant permanent custody of a child where the record does *Page 9 
not contain reliable evidence about the child's wishes. In reSwisher, Franklin App. No. 02AP-1408, 2003-Ohio-5446, at ¶ 39; In reT.M., Cuyahoga App. No. 83933, 2004-Ohio-5222, at ¶ 44. Alternatively, the trial court could make a finding, based on credible evidence, that the child is not mature enough to express wishes in a meaningful manner.In re B.K., Fayette App. No. CA2006-03-011, 2006-Ohio-4424, at ¶ 12-13;In re Wright, at ¶ 12 (affirmative demonstration that child not capable of communicating wishes excuses consideration of child's wishes).
 {¶ 19} In considering the child's wishes, the trial court noted that "[t]he wishes of the child are not expressed and not inconsistent with the position of the Guardian Ad Litem (GAL). The maturity of the child is age 4." This statement does not address J.W.'s wishes or whether he was capable of expressing those wishes. In fact, there is no evidence in the record regarding his wishes or his ability to express his wishes. Neither the guardian ad litem's report nor her testimony at the hearing indicate whether J.W. is capable of expressing his wishes and, if so, what his wishes are. It is not clear from her report whether she even interviewed the child. Mother, grandmother, and J.W. did not testify at the hearing. Additionally, the trial court did not hold an in camera hearing to determine whether J.W. was capable of expressing his wishes. The only witness to testify at the hearing was the FCCS case worker assigned to the case, who testified that despite his physical problems, J.W. is very intelligent and communicates very well. He was able to describe to case workers his environment during home visits.
 {¶ 20} As previously noted, J.W. was four years old at the time of the hearing. This court has previously held that even a three and one-half year old child is arguably capable of expressing wishes as to placement.Swisher, at ¶ 37. Thus, the trial court was *Page 10 
required to consider J.W.'s wishes or find that he was not capable of expressing those wishes. The trial court did neither. The trial court's failure to discern whether J.W. was capable of expressing his wishes as to placement and, if so, what those wishes were, is reversible error and requires the vacation of the judgment granting permanent custody, and a remand to the trial court. In re T.V., Franklin App. No. 04AP-1159,2005-Ohio-4280, at ¶ 62. The trial court's failure to ascertain J.W.'s wishes also made it impossible for the trial court to determine whether the child should have separate legal counsel appointed to represent his interests. J.W. would have a right to separate legal representation if his wishes conflicted with the view of the guardian ad litem. Id. at ¶ 72.
 {¶ 21} Consequently, on remand, the trial court must take evidence to determine whether J.W. is mature enough to express his wishes as to his placement and, if so, what his wishes are. If the evidence demonstrates that the child is unable to express his wishes, the trial court must make this finding as part of its new judgment and no further hearing is required. If the child is able to express his wishes, the trial court must consider those wishes, in addition to the entirety of the evidence before it, in rendering its new judgment. If the child's expressed wishes do not conflict with the guardian ad litem's recommendation, counsel need not be appointed for the child, and no further hearing is required. If those wishes do conflict with the guardian ad litem's recommendation, the trial court must appoint separate counsel to represent J.W. Id. at ¶ 65; In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500; Swisher, at ¶ 43-44. If an appointment of legal counsel is required, the trial court must hold a new permanent custody hearing to allow the child's new attorney to fully participate in the hearing and to represent J.W.'s interests. *Page 11 
Whichever route is taken, the trial court is to enter judgment based on all evidence before it, including J.W.'s wishes.
 {¶ 22} In this context, we note the failure of the guardian ad litem's report to discuss: (1) the child's maturity or ability to express himself, (2) his wishes as to placement, and (3) a recommendation as to placement. On remand, the trial court must ensure that the guardian's report is timely submitted and complete, including the guardian's recommendation as to placement. In re T.V., at ¶ 73-74. Only with this information can a trial court determine whether a child's wishes (if capable of expression) are in conflict with the guardian's recommendation, thus requiring separate counsel for the child.
 {¶ 23} Mother's first assignment of error is sustained. Our disposition of that assignment of error renders her second assignment of error moot.
 {¶ 24} We now address grandmother's appeal of the trial court's decision to deny her party status in this case.[3] Although a person who was not a party to an action generally has no right of appeal, it is well-settled that a person who has attempted to intervene as a party does have standing to appeal. In re Fusik, Athens App. No. 02CA16, 2002-Ohio-4410, at ¶ 20.
 {¶ 25} Pursuant to Juv.R. 2(Y), a grandparent is a mandatory party to a custody proceeding when the parent of the child involved is younger than 18 years old. At the time grandmother filed her motion to intervene, however, mother was over 18. A *Page 12 
grandparent becomes a discretionary party to the proceeding once the parent reaches 18. In re Walker, at ¶ 24. Thus, grandmother was not a mandatory party to the proceedings as that term is defined in Juv.R. 2(Y). Nor did grandmother have any legal right or interest in the care and custody of J.W. that would require intervention as of right pursuant to Civ.R. 24(A). At common law, grandparents had no legal right of access to their grandchildren. In re Whitaker (1988), 36 Ohio St.3d 213,214. Moreover, grandparents have no current constitutional right of association with their grandchildren. See In re Schmidt (1986),25 Ohio St.3d 331, 336; In re Tammy M., Lucas App. No. L-02-1108, 2003-Ohio-492, at ¶ 13. See, also, In re Goff, Portage App. No. 2001-P-0144,2003-Ohio-6768, at ¶ 14 (noting application of Civ.R. 24 as a guide for joining parties in custody cases).
 {¶ 26} A trial court may allow permissive intervention, pursuant to Civ.R. 24(B), in its discretion. An order denying a motion to intervene will be reversed only upon a showing that the trial court abused its discretion. Id. at ¶ 11; In re M.S., Summit App. No. 22158,2005-Ohio-10, at ¶ 30. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. In re Wright, at ¶ 18, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 27} Absent a legal right or protected interest, intervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild.Schmidt, at 338 (Celebrezze, C.J., concurring). *Page 13 
 {¶ 28} None of these situations apply to grandmother. Although it is clear that grandmother cares for her grandson's welfare, she does not have any legal right or interest to custody or visitation with J.W, she has never exercised significant parental control over J.W., assumed parental duties for J.W., or stood in loco parentis over him.[4] SeeIn re Bailey (Mar. 15, 2001), Tuscarawas App. No. 2000AP110071 (denial of grandmother's motion to intervene not abuse of discretion where grandmother failed home study and did not rise to the level of in loco parentis). J.W. has lived in a foster home for his entire life, and grandmother has only had visitations with him pursuant to court orders.In re M.S., at ¶ 31. Temporary court-ordered visitation is not sufficient to mandate intervention. In re Massengill (1991),76 Ohio App.3d 220, 225. Moreover, grandmother sought intervention in an attempt to obtain legal custody of J.W. Even though she was not a party to the custody proceedings, the trial court still considered whether she would be an appropriate placement for J.W. Given the concerns about grandmother, and her unsuccessful home study, the trial court denied her request for legal custody. The trial court did not abuse its discretion when it denied grandmother's motion to intervene. Accordingly, grandmother's first assignment of error is overruled.
 {¶ 29} In her third assignment of error, grandmother also contends that the trial court's decision to deny intervention violated her right to due process. We disagree. The Supreme Court of Ohio considered and rejected this constitutional argument in Schmidt. The court noted that because grandparents do not have any legal right to custody or visitation with a grandchild, a decision denying a motion to intervene in a custody *Page 14 
proceeding did not deprive them of a constitutionally-protected right without due process of the law. Id. at 336. Grandmother's third assignment of error is overruled.
 {¶ 30} Given our determination that the trial court did not err by denying grandmother's motion to intervene, she lacks standing to contest the award of permanent custody in this case. See In re Bailey, supra;In re Voshel (May 3, 1995), Wayne App. No. 2913. Accordingly, grandmother's remaining assignments of error are dismissed. The trial court's judgment denying grandmother's motion to intervene is affirmed.
 {¶ 31} In conclusion, mother's first assignment of error is sustained, rendering her second assignment of error moot. Grandmother's first, third, and sixth assignments of error are overruled, and her remaining assignments of error are dismissed for lack of standing. Accordingly, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting FCCS permanent custody of J.W. is vacated, and the matter is remanded for further proceedings consistent with this opinion. The trial court's judgment denying grandmother's motion to intervene is affirmed.
Judgment vacated and cause remanded; denial of motion to interveneaffirmed.
FRENCH and McGRATH, JJ., concur.
[1] The child's father was notified of these proceedings but did not respond to any of those notices.
[2] It appears that grandmother had five minor children, including mother at this time. At least one of those children was in FCCS' custody at the time of the hearing.
[3] Grandmother did not appeal from the trial court's July 6, 2005 judgment dismissing her as a party. Instead, she appeals the trial court's August 1, 2006 denial of her motion to intervene. For this reason, her reliance on In re Walker, Ashtabula App. No. 2005-A-0067,2006-Ohio-739 is misplaced, as that case dealt with the removal of a grandparent-party once the child-parent turned 18, and not a decision to deny intervention. Id. at ¶ 28.
[4] Because grandmother did not stand in loco parentis over J.W., the trial court was not required to appoint her counsel pursuant to R.C.2151.352. Accordingly, her sixth assignment of error is overruled.
 *Page 1