OPINION
{¶ 1} Appellant, C.W., appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which that court granted the motion for permanent court commitment ("PCC") filed by appellee, Franklin County Children Services ("FCCS") with respect to appellant's son, J.W.
 {¶ 2} J.W. was born on April 3, 2002. He is a medically fragile child, having been born with Dwarfism, Clubfoot, and Osteogenesis Imperfecta II, also known as "Brittle *Page 2 
Bone Disease." At the time of J.W.'s birth, appellant was 14 years old. When J.W. was released from the hospital on May 3, 2002, he went directly to a specially trained foster home for medically fragile children with special needs. He has remained in that foster home ever since. The foster parents care for two other special-needs foster children, and receive assistance from two in-home childcare providers.
 {¶ 3} On July 7, 2003, FCCS filed a complaint alleging that J.W. was a dependent child. On August 13, 2003, the magistrate held an uncontested adjudicatory hearing, at which J.W. was adjudicated dependent, and the magistrate made him a ward of the court, and committed him temporarily to the custody of FCCS. By judgment entry journalized August 20, 2003, the trial court adopted the magistrate's decision. On July 7, 2004, at the annual review hearing, temporary court commitment was extended to January 5, 2005.
 {¶ 4} On December 30, 2004, FCCS filed a motion for PCC. Following a hearing held over several days, the trial court granted PCC on August 1, 2006. Appellant appealed, and this court reversed and remanded for a new trial because the record lacked evidence as to J.W.'s wishes, or whether his level of maturity permitted him to express his wishes. See In reJ.W., Franklin App. No. 06AP-864, 2007-Ohio-1419, discretionary appeal not allowed, 114 Ohio St.3d 1512, 2007-Ohio-4285, 872 N.E.2d 952.
 {¶ 5} Upon remand, the guardian ad litem ("GAL") filed a supplemental report on June 22, 2007. On August 30, 2007, the trial court held a new trial on the PCC motion. By decision and entry journalized on September 6, 2007, the trial court granted the motion. Appellant timely appealed and advances the following four assignments of error for our review, as follows: *Page 3 
 Assignment of Error One
 THERE IS INSUFFICIENT CREDIBLE EVIDENCE TO SUPPORT THE JUDGMENT OF THE TRIAL COURT WHICH IS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error Two
 APPELLANT WAS DEPRIVED [OF] THE EFFECTIVE ASSISTANCE OF COUNSEL.
 Assignment of Error Three
 THE GRANT OF PERMANENT CUSTODY IS NOT IN THE BEST INTERESTS OF THIS CHILD.
 Assignment of Error Four
 A PERMANENT CUSTODY ORDER UNDER ORC § 2151.414(B)(1)(D) IS UNCONSTITUTIONAL AS IT CREATES AN UNREBUTTABLE PRESUMPTION OF PARENTAL UNFITNESS
 {¶ 6} In order to terminate parental rights, the movant must prove, by clear and convincing evidence, one of the four factors enumerated in R.C. 2151.414(B)(1) and that the child's best interest is served by a grant of permanent custody. In re M.B., Franklin App. No. 04AP-755,2005-Ohio-986. Clear and convincing evidence requires that the proof "`produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" In re Estep (Feb. 8, 2001), Franklin App. No. 00AP-623, 2001 Ohio App. LEXIS 435, at *4, quotingIn the Matter of Coffman (Sept. 7, 2000), Franklin App. No. 99AP-1376, 2000 Ohio App. LEXIS 4033, citing Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. In the present case, the trial court found that J.W. had been in FCCS' temporary custody for 12 or more months of *Page 4 
a consecutive 22-month period, pursuant to R.C. 2151.414(B)(1)(d), and that PCC would be in J.W.'s best interest.
 {¶ 7} In her first assignment of error, appellant challenges the trial court's judgment as being unsupported by sufficient evidence and against the manifest weight of the evidence, because, she maintains, the record is devoid of evidence as to whether the problems that gave rise to the filing of the dependency complaint had been resolved or sufficiently mitigated within one year of that filing. Specifically, she argues that, pursuant to R.C. 2151.353(F), the trial court lost jurisdiction to consider a PCC motion when FCCS had not filed it within one year of the filing of the original complaint, or the "sunset date."
 {¶ 8} We addressed and rejected the identical argument in In reBowers, Franklin App. No. 02AP-347, 2002-Ohio-5084, discretionary appeal not allowed, 97 Ohio St.3d 1471, 2002-Ohio-6347, 779 N.E.2d 237. There, we explained:
 The Ohio Supreme Court decision in In re Young Children (1996), 76 Ohio St.3d 632, 669 N.E.2d 1140, allows a juvenile court to exercise continuing jurisdiction when the parents have not remedied the underlying conditions which led to the granting of temporary custody. Clearly, the drug abuse problems of the parents and the instability arising from those problems had been ongoing up to and through the date of trial. Pursuant to In re Young Children, the trial court had jurisdiction to enter the orders it did. The syllabus to that case reads:
 "The passing of the statutory time period ("sunset date") pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." (Emphasis added.) The court further stated:
 "This holding allows the juvenile court to assess each situation on its merits and does not mandate the return of children to a situation from which they originally needed protection solely because the agency charged with their care missed a filing deadline. Thus, we hold that when the sunset *Page 5 
date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child. * * *" Id. at 638. See, also, In re Shawn Ellis (Mar. 9, 2000), Franklin App. No. 99 AP-725, 2000 Ohio App. LEXIS 849; Holloway v. Clermont Cty. Dept. of Human Serv. (1997), 80 Ohio St.3d 128, 684 N.E.2d 1217.
Id. at ¶ 27-29.
 {¶ 9} Based upon the foregoing authority, the trial court did not lose jurisdiction to consider and determine FCCS' PCC motion. For this reason, appellant's first assignment of error is overruled.
 {¶ 10} In her second assignment of error, appellant argues that she was deprived of the effective assistance of counsel in the firsttrial because, in closing argument at that 2004 trial, her attorney essentially conceded that appellant was not ready for J.W. to come home and that appellant had not made the necessary progress.
 {¶ 11} To prove ineffective assistance of counsel, the party must first show that counsel's performance was deficient. Strickland v.Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by theSixth Amendment to the United States Constitution. Id. The party must then show that counsel's deficient performance prejudiced her. Id. The party must demonstrate a reasonable probability that a different result would have been returned but for counsel's deficiencies. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Prejudice" exists only when counsel's performance renders the result of the trial unreliable or the proceeding unfair. Id. A party's failure to *Page 6 
satisfy one prong of the Strickland test negates a court's need to consider the other. Id. at 697.
 {¶ 12} "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A properly licensed attorney is presumed competent, and the burden of proving ineffectiveness is on the party asserting it. State v. Smith (1985), 17 Ohio St.3d 98, 100, 17 OBR 219,477 N.E.2d 1128. Thus, counsel's actions that "might be considered sound trial strategy" are presumed effective. Strickland, supra, at 689.
 {¶ 13} We note that appellant was represented at the August 2007 hearing by a different attorney than the one who represented her at the 2004 hearing, and her new attorney gave a new closing argument. She is not arguing that any aspect of her representation at the August 2007 hearing was deficient, and our review of the transcript of that hearing reveals that her attorney was not deficient. Moreover, even if her attorney's closing argument at the 2004 hearing was deficient, appellant cannot satisfy the prejudice prong of the Strickland test. The trial court had before it the fresh perspective and cogent closing argument of appellant's new attorney, and her first attorney's closing argument does not appear to have affected the result that is before us for review. For these reasons, appellant's second assignment of error is overruled.
 {¶ 14} In her third assignment of error, appellant argues that the trial court's finding that PCC is in J.W.'s best interest is against the manifest weight of the evidence. A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312, ¶ 28, discretionary appeal not allowed, 103 Ohio St.3d 1429, 2004-Ohio-4524, 814 N.E.2d 491. Judgments supported by some competent, *Page 7 
credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. Id.; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, paragraph one of the syllabus. The findings of a trial court are presumed correct since, as the trier of fact, it is in the best position to weigh the evidence and evaluate the testimony. In re Brown (1994), 98 Ohio App.3d 337, 342, 648 N.E.2d 576; In re Hogle (June 27, 2000), Franklin App. No. 99AP-944. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19,526 N.E.2d 1350. "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
 {¶ 15} Section 2151.414(D) of the Ohio Revised Code provides, in pertinent part:
 In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; *Page 8 
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 16} Appellant's argument under her third assignment of error does not contest any of the trial court's findings as to the R.C. 2151.414(D) factors, nor does she contest the trial court's analysis of those factors. Her argument consists entirely of two contentions: (1) the evidence supported a Planned Permanent Living Arrangement ("PPLA") rather than PCC; and (2) there is insufficient evidence as to J.W.'s wishes because the GAL conceded that, in attempting to ascertain whether J.W. was mature enough to express an opinion regarding PCC, she never used the words "custody, adoption or permanency"[1] and she never asked him whether he wanted to stop visiting with appellant, when, according to appellant, "[continuing visitation] is impossible if the agency's motion for permanent custody is granted."[2]
 {¶ 17} In response, FCCS points out that neither appellant nor the trial court could suggest or consider a PPLA because a motion for PPLA can only be made by the children services agency. In re A.B.,110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, syllabus ("After a public children services agency or private child placing agency is granted temporary custody of a child and files a motion for permanent custody, a juvenile court does not have the authority to place the child in a planned permanent living arrangement when the agency does not request this disposition."). *Page 9 
 {¶ 18} Moreover, FCCS argues, there is no evidence to refute the GAL's conclusion that J.W. is incapable of expressing his wishes regarding custody and there would have been no point in using the words "custody, adoption or permanency" with a child who does not understand those concepts. According to appellant, however, J.W. is capable of understanding custody issues if he is capable of reporting certain activities having taken place during visitation with appellant. She points to the caseworker's testimony that FCCS altered visitation after J.W. came home from a visit and informed the caseworker and foster mother that individuals smoked and drank beer around him, and that appellant's step-father was living with appellant and had been arrested.
 {¶ 19} Appellant appears to equate the child's ability to report specific instances of the conduct of others to his ability to understand the custody issues and to formulate and express his own wishes as to same. We do not see the correlation. A five-year-old child's ability to report acts that he personally witnessed does not refute or seriously call into question the GAL's opinion that the same five-year-old is incapable of expressing his wishes as to custody.
 {¶ 20} Moreover, the trial court properly relied upon the GAL's opinion that J.W. is incapable of expressing his wishes regarding custody. Pursuant to R.C. 2151.414(D)(2), the court must take into account "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child" in determining whether PCC is in the child's best interest. "The trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct expression of those wishes made by the child." In re C.F.,113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 56. The trial court's decision in this regard should not *Page 10 
be reversed unless "the court acted in an unreasonable, arbitrary, or unconscionable manner." Id.
 {¶ 21} The statute states that the trial court must take into account "the child's wishes" but is silent as to whether this means the child's wishes as to his or her placement, or the more specific issue of termination of parental rights. This court has interpreted the statute to refer to the child's wishes as to placement. See, e.g., In reD.S., Franklin App. No. 07AP-479, 2007-Ohio-6781, ¶ 37; In re J.W., Franklin App. No. 06AP-864, 2007-Ohio-1419, ¶ 20-21, discretionary appeal not allowed, 114 Ohio St.3d 1512, 2007-Ohio-4285, 872 N.E.2d 952;In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, ¶ 48, discretionary appeal not allowed, 103 Ohio St.3d 1495, 2004-Ohio-5605,816 N.E.2d 1081. Thus, in this case, the GAL's opinion is not rendered unreliable because she did not use the words "custody, adoption or permanency" and did not specifically inquire whether J.W. wanted to stop visiting with appellant.
 {¶ 22} In this case the GAL testified as follows:
 [ON DIRECT EXAMINATION]
 Q. * * * Could you state to the Court what you believe is [J.W.'s] understanding of the proceedings today.
 A. I can't honestly say that [J.W.] truly understands. He has been in the same home since he came home from the hospital shortly after his birth. His — in the same foster that, which is a very loving foster home. He has had the same primary caretaker for the 40 day hours a week * * * He is very bonded with the foster mother and the foster father. He — I — this is my opinion that he sees them as his grandparents and he sees the caretaker, [S.H.], as his mom-
(Aug. 30, 2007 Tr., 7.) *Page 11 
 [ON CROSS EXAMINATION]
 Q. What did you discuss with him?
 A. I just sat with him for a while on the floor and talked to him about his home and his toys and asked him if he remembered his mother * * * and he said yes, and then he went to [S.H.] and hugged her and called her mommy and-
 Q. Did you ever use the words custody, adoption, or permanency in speaking with him?
 A. Not exactly those words. I asked him if he was happy with [S.H.]. Did he miss his mommy; I asked him if he wanted to live with his mommy and whenever I asked him that kind of question, he would go to [S.H.], the caretaker.
 Q. Did you ever broach the subject of not ever seeing his mother again?
 A. I did, but I — I'm not — I don't think he really understands concepts like that not ever seeing.
(Aug. 30, 2007 Tr., 13.)
 {¶ 23} On the record before us, we find that the GAL properly inquired into J.W.'s maturity and capability to express his wishes regarding custody, and the trial court satisfied its statutory duty under R.C.2151.414(D), and properly exercised its discretion to consider the wishes of the child expressed through the GAL. Accordingly, the trial court's finding that J.W. is incapable of expressing his wishes regarding PCC is supported by competent, credible evidence. Moreover, as stated earlier, the trial court was not required to consider a PPLA because FCCS had not requested one. For all of these reasons, appellant's third assignment of error is overruled.
 {¶ 24} In her fourth assignment of error, appellant argues that the judgment is unconstitutional because R.C. 2151.414(B)(1)(d) creates an unrebuttable presumption of *Page 12 
parental unfitness where the child has been in the temporary custody of the children services agency for at least 12 of 22 consecutive months. We have repeatedly rejected the same argument. See, e.g., In reAbram, Franklin App. No. 04AP-220, 2004-Ohio-5435, discretionary appeal not allowed, 104 Ohio St.3d 1441, 2004-Ohio-7033, 819 N.E.2d 1124;In re Bray, Franklin App. No. 04AP-842, 2005-Ohio-1540, discretionary appeal not allowed, 105 Ohio St.3d 1564, 2005-Ohio-2447, 828 N.E.2d 118;In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, discretionary appeal not allowed, 103 Ohio St.3d 1495, 2004-Ohio-5605,816 N.E.2d 1081; In re S.W., Franklin App. No. 05AP-1368, 2006-Ohio-2958, certiorari denied, Z.W. v. Franklin Cty. Children Servs. (2007),127 S.Ct. 1152, 166 L.Ed.2d 999; In re S.R., Franklin App. No. 05AP-1356,2006-Ohio-4983, discretionary appeal not allowed, 112 Ohio St.3d 1421,2006-Ohio-6712, 859 N.E.2d 559, certiorari denied, R. R. v. FranklinCty. Children Serv. (2007), 127 S.Ct. 2882, 167 L.Ed.2d 1158.
 {¶ 25} In accordance with the foregoing authorities, appellant's fourth assignment of error is overruled.
 {¶ 26} Having overruled all four of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
PETREE and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Brief of Appellant, 8.
[2] Id. *Page 1