OPINION
{¶ 1} Appellant, J.R.G., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting Franklin County Children Services ("FCCS") permanent custody of J.R.G.'s minor children, J.A.G. and J.L.G. For the following reasons, we affirm.
 {¶ 2} On April 1, 2004, J.R.G. gave birth to a son, J.A.G. Approximately a year later, on August 18, 2005, J.R.G. gave birth to a daughter, J.L.G. J.R.G. was unmarried when she gave birth to her children, and she did not name either child's father on the *Page 2 
children's respective birth certificates. Although J.R.G. later disclosed the fathers' names to FCCS, neither putative father acknowledged his paternity or asserted any interest in the instant proceeding.
 {¶ 3} FCCS first became involved with J.R.G.'s family in March 2006, when it received reports from J.R.G.'s housing program that she had left her children unsupervised. Initially, FCCS merely assisted J.R.G. with providing for the childrens' safety and basic needs. However, on October 3, 2006, FCCS obtained custody of J.A.G. and J.L.G. pursuant to an emergency care order after a FCCS community case worker saw J.R.G. drop J.L.G., hit J.A.G., and grab both children by one arm. FCCS then filed a complaint alleging that J.A.G. and J.L.G. were neglected and dependent children. In response, on March 9, 2007, a magistrate granted FCCS temporary custody of the children and appointed a guardian ad litem for them.
 {¶ 4} On May 16, 2007, the magistrate held an adjudicatory hearing. At FCCS' request, the magistrate dismissed the allegation that J.A.G. and J.L.G. were neglected children. In his May 21, 2007 decision, the magistrate memorialized that dismissal, found J.A.G. and J.L.G. were dependent children, made the children wards of the court, and committed the children to the temporary custody of FCCS. Additionally, the magistrate approved and adopted the case plan that FCCS had developed to facilitate reunification of the family. On the same day the magistrate filed his decision, the trial court adopted and approved that decision.
 {¶ 5} On February 4, 2008, FCCS moved for permanent custody of J.A.G. and J.L.G. After a two-day trial in August 2008, the trial court issued a judgment that *Page 3 
terminated J.R.G.'s parental rights and granted FCCS permanent custody of the children. J.R.G. now appeals from that judgment and assigns the following error:
 Franklin County Children Services failed to present clear and convincing evidence satisfying its burden of proof as to the requisites for termination of parental rights pursuant to Section 2151.414 of the Revised Code.
 {¶ 6} Although parents have a paramount right to raise and care for their children, that right is not absolute. In re K.H.,119 Ohio St.3d 538, 2008-Ohio-4825, at ¶ 40. R.C. 2151.414(B)(1) provides that a court may permanently terminate parental rights if it determines, "by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody" and one of the R.C. 2151.414(B)(1)(a) through (d) factors apply. "Clear and convincing evidence" is that degree of proof that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. While establishing a matter by clear and convincing evidence requires a degree of proof beyond a mere "preponderance of the evidence," it does not require proof "beyond a reasonable doubt" as in criminal cases. Id.
 {¶ 7} An appellate court will not reverse a trial court's judgment on a permanent custody case unless it is against the manifest weight of the evidence. In the Matter of A.P., Franklin App. No. 08AP-186,2009-Ohio-438, at ¶ 10; In re A.L.D., Franklin App. No. 08AP-238,2008-Ohio-3626, at ¶ 9. Judgments supported by competent, credible evidence going to all the material elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. When reviewing a judgment under the manifest weight of the evidence *Page 4 
standard, an appellate court must presume the findings of the trier of fact are correct because it is best able to observe the witnesses and use those observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81. If the evidence is susceptible to more than one interpretation, an appellate court must construe it in a manner consistent with the trier of fact's judgment. Cent. Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d. 581, 584.
 {¶ 8} In the case at bar, the trial court determined that R.C. 2151.414(B)(1)(d) applied. In order to find that factor satisfied, the trial court found that J.A.G. and J.L.G. "ha[d] been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1)(d). For purposes of R.C. 2151.414(B)(1), a child enters the temporary custody of an agency "on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Id. Here, the trial court found that FCCS removed J.A.G. and J.L.G. from their home on October 3, 2006, so they entered into FCCS' temporary custody on December 2, 2006. The children remained in FCCS' temporary custody throughout the pendency of the proceedings below. Consequently, the evidence established that when FCCS moved for permanent custody of the children, they had been in FCCS' custody for over 14 months of a consecutive 22-month period.
 {¶ 9} Indeed, J.R.G. acknowledges that the evidence FCCS presented at trial proved that J.A.G. and J.L.G. spent "twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999" in FCCS' temporary custody. J.R.G., *Page 5 
however, challenges the constitutionality of R.C. 2151.414(B)(1)(d) because she contends that it creates a presumption of parental unfitness. Because J.R.G. neither asserted this issue before the trial court nor assigned it as error before this court, we need not address it. Williams v. Barrick, Franklin App. No. 08AP-133, 2008-Ohio-4592, at ¶ 28 (refusing to consider arguments that did not correspond with any assignment of error because an appellate court "rules on assignments of error only, and will not address mere arguments"); In the Matter ofD.T., Franklin App. No. 07AP-853, 2008-Ohio-2287, at ¶ 19 (applying the waiver doctrine to the same argument J.R.G. now raises because the appellant failed to assert the argument in the trial court). Instead, we merely direct J.R.G. to precedent in which we have previously considered and rejected her argument. See In the Matter of D.T., supra, at ¶ 20;In the Matter of J.W., Franklin App. No. 07AP-791, 2008-Ohio-1423, at ¶ 24 (collecting cases); In the Matter of N.W., Franklin App. No. 07AP-590, 2008-Ohio-297, at ¶ 38 (collecting cases).
 {¶ 10} In addition to finding that the evidence presented satisfies a R.C. 2151.414(B)(1) factor, a trial court also must determine that FCCS' permanent custody of the child is in the child's best interest before granting such custody to FCCS. In determining the best interest of a child, the trial court must consider all relevant factors, including:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 6 
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
R.C. 2151.414(D)(1) through (5).
 {¶ 11} Here, with regard to the first factor, the trial court found that J.A.G. and J.L.G. are very bonded with each other and share a very strong bond with their foster caregiver. Also, the trial court found that J.A.G. and J.L.G. have "some modest" bond with J.R.G. The evidence supports these findings. Diane Tate, the FCCS child welfare case worker assigned to J.R.G.'s family in June 2007, testified that she observed some bonding between J.R.G. and her children, but she believes that the children are more bonded with their foster mother. Also, Tate stated that J.R.G. only attended 35 of 88 visits with the children, and while J.A.G. initially cried at the end of the visits, he does not do that anymore. Daniel Miller, the guardian ad litem assigned to J.A.G. and J.L.G., testified that he perceived a very strong bond between the children, as well as between the children and their foster mother.
 {¶ 12} With regard to the second factor, the trial court found that J.A.G. expressed a desire to live with his foster mother, while J.L.G. could not state any opinion due to her tender age. Again, the evidence supports this finding. Miller testified that J.A.G. remembers living with J.R.G., although his memory is hazy because J.A.G. entered FCCS' custody when he was only two-and-one-half years old. When Miller asked J.A.G. *Page 7 
if he wanted to stay with his foster mother, J.A.G. said "yes." When asked how long he wanted to stay with his foster mother, J.A.G. said "forever." Miller also stated that he tried to ascertain J.L.G.'s wishes, but she is too young to understand the situation.
 {¶ 13} With regard to the third factor, the trial court found that J.A.G. and J.L.G. both lived with their mother from birth to October 3, 2006, and that after October 3, 2006, FCCS had temporary custody over the children. The trial court correctly summarized the children's custodial history. Tate testified that FCCS obtained custody of the children through an emergency care order on October 3, 2006, and since that time, they have been in foster care. Tate also stated that FCCS placed the children in their current foster home in February 2007.
 {¶ 14} With regard to the fourth factor, the trial court found that J.A.G. and J.L.G. need a legally secure permanent placement and that they will only achieve such a placement if FCCS receives permanent custody. We conclude that the evidence supports this finding. While J.R.G. loves her children, she is unable to provide a permanent home for them. According to her own testimony, J.R.G. suffers from schizophrenia, bipolar disorder, and posttraumatic stress disorder. However, J.R.G. is unable, or unwilling, to take any of the medication prescribed for her mental illnesses. J.R.G. repeatedly stated that she does not believe that she needs any medication, so she questions why her medical provider prescribed it and insisted she take it. Tate testified that J.R.G.'s untreated mental illnesses diminish her ability to provide the children with stability and, correspondingly, increase the risk of harm to the children. Additionally, J.R.G. admitted that she abuses marijuana. Although J.R.G. sought out treatment for her dependency in June or July 2008, she acknowledged that she tested positive for *Page 8 
marijuana approximately two weeks before trial began in August 2008. Finally, J.R.G. cannot provide her children with stable housing. J.R.G. currently lives with her mother in a Columbus Housing Network rental house. Tate testified that because J.R.G. is not named on the lease, she is living in the rental house illegally. Moreover, J.R.G. admitted that she could not provide the children with appropriate housing as required by her case plan.
 {¶ 15} In contrast to J.R.G., the foster mother provides J.A.G. and J.L.G. with a stable home. Tate testified that the children share a "strong bond" with the foster mother and that the foster mother wants to adopt the children. Miller also testified about the strong bond between the children and the foster mother, and he recommended that the trial court grant FCCS permanent custody.
 {¶ 16} After considering each of the relevant R.C. 2151.414(D) factors, [1] the trial court found that it was in the childrens' best interests to permanently commit them to FCCS' custody. "`The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" In re A.L.D., supra, at ¶ 8, quoting In re Hogle (June 27, 2000), Franklin App. No. 99AP-944. Here, according the necessary respect, we conclude that the manifest weight of the evidence justifies the trial court's best interest determination. *Page 9 
 {¶ 17} J.R.G., however, asserts that termination of her parental rights is not in the childrens' best interests because a true love relationship exists between her and the children. J.R.G.'s only support for this proposition is In the Matter of Gibson (July 19, 1979), Franklin App. No. 78AP-856, in which this court held that "where there is a true parent-child relationship and true love exchanged between the parent and child, permanent commitment is out of the question." As we have previously held, Gibson predates the enactment of R.C. 2151.414, which replaced the "true love" test articulated in Gibson as the standard for determining whether to permanently terminate parental rights. In the Matter of S.W., Franklin App. No. 05AP-1368,2006-Ohio-2958, at ¶ 15; In the Matter of B.L., Franklin App. No. 04AP-1108, 2005-Ohio-1151, at ¶ 25. Consequently, Gibson has no applicability here.
 {¶ 18} Moreover, to the extent that the evidence showed a loving relationship between J.R.G. and the children, the trial court recognized that bond in its consideration of the R.C. 2151.414(D)(1) factor. Despite the existence of that bond, the trial court determined that granting permanent custody to FCCS was in the childrens' best interests given the totality of the evidence. As we concluded above, that determination is not against the manifest weight of the evidence.
 {¶ 19} In sum, the trial court concluded that FCCS proved by clear and convincing evidence that J.A.G. and J.L.G. have been in FCCS' custody for over 12 months of a consecutive 22-month period and it is in the childrens' best interests to grant FCCS permanent custody. Because competent, credible evidence supports this judgment, we conclude that the trial court did not err in granting FCCS permanent custody. Accordingly, we overrule J.R.G.'s only assignment of error. *Page 10 
 {¶ 20} For the foregoing reasons, we overrule J.R.G.'s single assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
Judgment affirmed.
FRENCH, P.J., and BRYANT, J., concur.
[1] The trial court did not consider the fifth R.C. 2151.414(D) factor as the factors in R.C. 2151.414(E)(7) to (11) do not apply to J.R.G. and her children. *Page 1