[Cite as *In re D.D.*, 2026-Ohio-2379.]

## IN THE OHIO COURT OF APPEALS
## FIFTH APPELLATE DISTRICT
## MUSKINGUM COUNTY, OHIO

|  |  |
|---|---|
| IN RE D.D. | Case No. CT2025-0105 |
|  | Opinion And Judgment Entry |
|  | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 22430183 |
|  | Judgment: Affirmed |
|  | Date of Judgment Entry: June 23, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; David M. Gormley, Judges

**APPEARANCES:** Richard D. Hixson for Appellant-Grandmother, RONALD L. WELCH, JACOB J. WINSLOW for Appellee-Muskingum County Adult and Child Protective Services, ADAM O. JOHNSON for mother, ZACHARY DAUBENMIRE for father, SARAH WOSKE, Guardian ad Litem

*King, P.J.*

{¶ 1} Appellant grandmother, J.S., appeals the August 18, 2025 amended entry of the Muskingum County Juvenile Court denying her motion to intervene. Appellee is Muskingum County Adult and Child Protective Services ("MCACPS"). We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2} This case involves a child, D.D., born in August 2023. Mother of the child is A.D.; father is D.D. Mother and father are married and are the biological parents of the child. Appellant is the paternal grandmother of the child.

{¶ 3} On July 31, 2024, appellant filed a complaint for parentage, allocation of parental rights and responsibilities, and parenting time in the Muskingum County

Domestic Relations Court (Case No. DE 2024-0458). Appellant also filed a verified motion for temporary orders ex parte. Appellant alleged the child had been in her care since May 2024; she sought a designation for the residential parent and legal custodian of the child. By order filed July 31, 2024, the Domestic Relations Court designated appellant as the temporary residential parent and legal custodian of the child; mother and father were granted supervised parenting time with the child. Appellant and parents were ordered to submit to random drug and alcohol testing at the request of the court and an investigation of the parties was to be conducted by a court investigator.

{¶ 4} A hearing before a magistrate was held on October 24, 2024. By decision filed November 4, 2024, the magistrate found mother, father, and appellant to be unsuitable for the allocation of parental rights and responsibilities and unsuitable to be the residential and legal custodian of the child. The magistrate noted appellant testified she had been sober for a year and her drug of choice was crack cocaine; she could not remember when she had last used drugs. Also, in 2007 and 2008, MCACPS removed appellant's seven children from her custody; appellant has an extensive criminal history with her last felony in 2017. The magistrate further noted the child's parents were homeless and opposed custody to appellant. Father, appellant's son, reported multiple incidents of physical abuse by appellant during his childhood; he expressed concerns of appellant physically abusing the child of this action. By judgment entry filed November 21, 2024, the Domestic Relations Court approved and adopted the magistrate's decision and transferred the matter under R.C. 3109.06 to the Muskingum County Juvenile Court for further disposition (Case No. 22430183).

{¶ 5} The Juvenile Court accepted the case and a hearing was held on December 18, 2024. Only appellant and her husband appeared, along with MCACPS, mother and

father did not. By judgment entry filed on the same date, the Juvenile Court continued the temporary order of the Domestic Relations Court with appellant under the protective supervision of MCACPS.

{¶ 6} On December 20, 2024, MCACPS filed a request for an ex parte order and hearing to remove the child from appellant's custody because appellant and her husband tested positive for methamphetamines and amphetamines. By ex parte order filed on the same date, the Juvenile Court granted MCACPS emergency temporary custody of the child. An emergency shelter care hearing was held on December 23, 2024. Again, only appellant and her husband appeared, mother and father did not. By judgment entry filed on the same date, temporary custody of the child remained with MCACPS.

{¶ 7} On January 13 and 14, 2025, the Juvenile Court appointed separate counsel to represent appellant and her husband. Thereafter, a case plan was filed for the biological parents of the child. A dispositional hearing was held on March 12, 2025. Again, only appellant and her husband appeared, mother and father did not. By entry filed March 13, 2025, the Juvenile Court continued the temporary custody of the child with MCACPS.

{¶ 8} On March 24, 2025, appellant and her husband filed a joint motion to intervene and be named parties to the case under Civ.R. 24(B) and Juv.R. 2(BB). A hearing was held on July 29, 2025. Appellant, as well as mother and father, appeared for this hearing. By amended entry filed August 18, 2025, the Juvenile Court denied the motion and terminated court appointed counsel; the Juvenile Court deemed the entry a final appealable order.

{¶ 9} Appellant filed an appeal with the following assignment of error:

I

{¶ 10} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO INTERVENE."

{¶ 11} In her sole assignment of error, appellant claims the Juvenile Court erred in denying her motion to intervene. We disagree.

{¶ 12} On appeal, appellant argues in part intervention of right under Civ.R. 24(A)(2), but she filed her motion to intervene with the trial court under Civ.R. 24(B) and Juv.R. 2(BB). Appellant's Brief at 9-11; Motion to Intervene filed March 24, 2025. Civ.R. 24(B) governs permissive intervention and states:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

{¶ 13} Juv.R. 2(BB) defines "party" as: "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court."

{¶ 14} A decision on intervention under Civ.R. 24(B) is reviewed for abuse of discretion. *In re K.K.E.,* 2020-Ohio-6723, ¶ 15 (5th Dist.). "Abuse of discretion" means

an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 15} In her appellate brief, appellant argues she stood in loco parentis of the child since April/May 2024 and therefore she should have been granted permission to intervene. Appellant's Brief at 11-13; *In re J.W.,* 2007-Ohio-1419, ¶ 27 (10th Dist.), citing *In re Schmidt,* 25 Ohio St.3d 331, 338 (1986) (Celebreeze, C.J., concurring) ("intervention by grandparents in a permanent custody proceeding is appropriate where the grandparents have stood in loco parentis to their grandchild, or where the grandparents have exercised significant parental control over, or assumed parental duties for the benefit of, their grandchild"). But this case is not a permanent custody action; it started as a complaint for parentage and allocation of parental rights and responsibilities filed by appellant in the Domestic Relations Division. While we acknowledge appellant stood in loco parentis of the child for several months, the Domestic Relations Court specifically found appellant to be unsuitable and certified the case to the Juvenile Court for disposition. Appellant did not contest the finding of unsuitability as she did not appeal the certification to the Juvenile Court. *Robinson v. Robinson,* 19 Ohio App.3d 323, 324

(1984) (a certification order is a sufficient basis for an appeal contesting the finding of unsuitability).

{¶ 16} In their motion to intervene to the Juvenile Court, appellant and her husband argued the following:

> Movants state that allowing her to intervene will assist the Court in receiving full and accurate information about the parties and the minor child, so that the Court has all of the information necessary to make a decision that is in the best interest of the minor child. Should the Court allow one or both of the Movants to join as a party(s), Movants would be able to conduct and provide discovery that will enhance the Court's understanding of this matter. Allowing an intervention would also allow the grandmother to file a motion for legal custody, which she feels is in the best interest of the minor child.

{¶ 17} A hearing on the motion was held on July 29, 2025. The trial court heard from a MCACPS caseworker who testified that appellant and her husband had temporary custody of the child but then lost it because "[t]hey tested positive for meth." T. at 10. The caseworker opined appellant and her husband were not "a realistic or feasible option for custody" because appellant had "a long history with Children's Services." T. at 11. Appellant had seven children removed from her custody. *Id.* Appellant also has a long history with substance abuse and was recently discharged from a drug program due to lack of engagement. T. at 12. MCACPS was working to reunify the child with mother and father and the parents had made significant progress with their case plan. T. at 16-17.

The caseworker explained it was not customary for the agency to work reunification with grandparents while the parents of the child were making good progress on their case plan. T. at 26. The guardian ad litem stated the parents were doing really well working the case plan and did not see a need for appellant and her husband to intervene. T. at 32. In her report, the guardian ad litem questioned appellant's facts presented to the Domestic Relations Court to gain custody of the child; the facts were found to be "incomplete or untrue." March 12, 2025 Guardian ad Litem Report and Recommendations at 4.

{¶ 18} The Juvenile Court had before it the entire certified record from the Domestic Relations Court, testimony from the MCACPS caseworker, and a report and opinion from the guardian ad litem. Appellant was found to be unsuitable and she and her husband recently tested positive for meth; appellant failed to engage in a drug program. The biological parents were married and making significant progress with their case plan. The Juvenile Court has several sources to receive full and accurate information about the parties and the child to gain a full understanding of the matter.

{¶ 19} Given the evidence before the Juvenile Court, we cannot say the Juvenile Court abused its discretion in denying appellant's motion to intervene.

{¶ 20} The sole assignment of error is denied.

{¶ 21} For the reasons stated in our accompanying Opinion, the judgment of the Muskingum County Juvenile Court, is AFFIRMED.

{¶ 22} Costs to Appellant.

By: King, P. J.

Baldwin, J. and

Gormley, J. concur.