**In re LOPEZ et al.**

[Cite as *In re Lopez,* 166 Ohio App.3d 688, 2006-Ohio-2251.]

Court of Appeals of Ohio,
Third District, Wyandot County.

Nos. 16–05–10, 16–05–12, 16–05–13 and 16–05–14.

Decided May 8, 2006.

Upendra K. Patel, for appellant Elizabeth Herrera.

James Melle, for appellant Rene Lopez Sr.

Jonathan K. Miller, Wyandot County Assistant Prosecuting Attorney, for appellee Wyandot County Department of Job and Family Services.

Charles Hall, for appellees Joel and Sondra Herrera.

CUPP, Judge.

{¶ 1} Appellant Elizabeth Herrera appeals the judgment of the Wyandot County Court of Common Pleas, Juvenile Division, granting the Wyandot County Department of Job and Family Services ("WCDJFS") permanent custody of her children, Yazmin Herrera ("Sophie") (d.o.b. March 3, 2000), Sondra Herrera (d.o.b. December 26, 2001), Joel Herrera (d.o.b. December 26, 2001), and Rene Lopez Jr. (d.o.b. May 22, 2003).[1] Appellant Rene Lopez Sr. ("Rene Sr."), the father of Rene Lopez Jr., appeals the judgment of the Wyandot County Court of Common Pleas granting WCDJFS permanent custody of Rene Jr. The fathers of Sophie, Sondra, and Joel are not parties to this appeal. For the reasons that follow, we reverse the trial court's judgment regarding Sophie; however, we affirm the trial court's judgment regarding Sondra, Joel, and Rene Jr.

{¶ 2} WCDJFS removed the children from the home after Elizabeth left then nine-year-old Juan[2] home alone to watch three-year-old Sophie and the twins, Sondra and Joel, who were less than two years old, so that she could pick up Rene Sr. from work. Elizabeth took Rene Jr. with her. During her absence, Juan put Sondra and Joel into the dryer and turned it on. As a result, both Sondra and Joel sustained injuries.

{¶ 3} On September 26, 2003, WCDJFS filed a complaint alleging that Sondra and Joel were abused, neglected, and dependent children and that Sophie and Rene Jr. were neglected and dependent children. Subsequently, the trial court granted WCDJFS temporary custody of all four children.

{¶ 4} On February 22, 2005, WCDJFS filed a motion for permanent custody. The trial court held a hearing on May 9 and 10, 2005. At the permanent-custody hearing, WCDJFS presented the testimony of Dr. Darlene Barnes, a licensed psychologist. Dr. Barnes testified that she had administered psychological tests to both Elizabeth and Juan. According to Dr. Barnes, Juan had major depressive disorder and mood incongruent psychotic disorder. Dr. Barnes diagnosed Elizabeth as having depressive disorder, alcohol abuse in partial remission, attention deficit disorder, borderline intellectual functioning, and parent/child problems. Although Dr. Barnes testified that Elizabeth loves her children and has bonded with them, she also acknowledged that Elizabeth is impulsive and lacks consistency.

---

1. Throughout this opinion, Sophie, Sondra, Joel, and Rene Jr. are collectively referred to as "the children."

2. Juan (d.o.b. March 7, 1994) is Elizabeth's oldest child. During the permanent-custody hearing, Elizabeth voluntarily relinquished permanent custody of Juan to WCDJFS. Elizabeth does not appeal custody involving Juan; therefore, we will discuss Juan only as he relates to the issues being appealed.

{¶ 5} WCDJFS also presented the testimony of Connie Crego–Stahl, a licensed professional clinical counselor. Stahl testified that Elizabeth had tried to follow her recommendations but that she lacked consistency. WCDJFS also admitted into evidence a letter written by Stahl. In her letter, Stahl acknowledges that if Juan was "return[ed] to his biological family, Juan might become a danger to himself and/or family members."

{¶ 6} Louanne Hufford, the guardian ad litem for Juan, Sophie, Sondra, Joel, and Rene Jr., testified at the hearing that she had observed the ways in which the children interacted with each other, their parents, and their foster parents. Although Hufford recognized that Elizabeth and Rene Sr. both loved their children, she recommended that the trial court grant permanent custody to WCDJFS.

{¶ 7} WCDJFS also presented Hufford's guardian ad litem report. In her report, Hufford asserted that the visitations between Elizabeth and her children had deteriorated prior to the hearing. Further, Hufford noted that Rene Sr. sometimes sits in a chair and watches Rene Jr. play alone during their visitation. Hufford found that the children's interactions were chaotic when they were with Elizabeth and Rene but were much calmer when the children were with their foster parents. In addition, Hufford recognized several issues concerning Elizabeth and Rene Sr.'s parenting, including the couple's deteriorating relationship, the loss of Elizabeth's driver's license for driving without automobile insurance, and Rene Sr.'s drinking and driving. Further, Hufford noted that Elizabeth had failed to inform anyone that Sophie and Juan might have been sexually abused in the past.

{¶ 8} Hufford also recognized some positive steps taken by Elizabeth and Rene Sr. In Hufford's report, she stated that Elizabeth had a job. Moreover, at the permanent-custody hearing, Hufford testified that Elizabeth and Rene Sr. had recently taken the positive step of obtaining an adequate four-bedroom apartment. However, Hufford still recommended that permanent custody of the children be granted to WCDJFS.

{¶ 9} Another issue was Rene Sr.'s problem with alcohol abuse. George Sakash, a licensed professional counselor and a licensed chemical-dependency counselor, testified at the hearing that Rene Sr. has an alcohol-abuse disorder. Sakash testified that although Rene Sr. has attended alcohol counseling, Rene Sr. believes that he needs only to lower his amount of consumption, when he really needs to avoid alcohol completely. WCDJFS also presented certified copies of Rene Sr.'s convictions for OMVI and OVI.

{¶ 10} The children's foster parents, Aleta and Ralph Willoughby, also testified at the permanent-custody hearing. During her testimony, Aleta testified that when the children came back from unsupervised visits at Elizabeth's house, they

were very hungry. As a result, Aleta and her husband Ralph provided the children with snacks for the visits.

{¶ 11} Aleta and Ralph testified about several incidents that reflect poorly upon Elizabeth and Rene Sr.'s parenting. Both Aleta and Ralph testified about an incident when they picked up Rene Jr. from Elizabeth and Rene Sr.'s home after an unsupervised visit with Elizabeth and Rene Sr. According to the foster parents, Rene Jr. was running a high fever, and while he was at Elizabeth and Rene Sr.'s home, no steps were taken to reduce his fever. Aleta also testified that during one of the unsupervised visits, Sophie and Sondra were almost hit by a vehicle because they had run onto the road to chase a cat.

{¶ 12} Further, Ralph testified about an incident during which he went to Elizabeth's home and knocked vigorously on her door but no one responded, even though he could hear Rene Jr. crying. After getting no answer, Ralph called children services, who came to the home. Children services called Elizabeth from a cell phone, and Elizabeth finally answered the door. Ralph estimated that about 30 minutes had elapsed between the time when he first arrived and knocked on the door and the time when Elizabeth actually opened the door. Jill Luikhart, a social services worker at WCDJFS, testified that Elizabeth told her that she did not answer the door because she had been sleeping.

{¶ 13} During her testimony, Aleta also testified that the children get along very well with each other and play well together. In her testimony, Aleta described the children's negative reactions to visitation with Elizabeth and Rene, including the fact that the children sometimes resist visitation by hiding or by refusing to put on their jackets. Aleta further testified that the children have bonded with her and her husband.

{¶ 14} Anne Denman works for Wyandot County Help Me Grow, which screens children for developmental delays. Denman testified that Joel, Sondra, and Rene Jr. had been screened for developmental delays. The screenings revealed that Joel had delays in gross motor and language development, Sondra had delays in fine motor and language development, and Rene Jr. had delays in language development.

{¶ 15} As part of their case plan, Elizabeth and Rene Sr. took several parenting classes. Elizabeth Smith, the parenting class teacher, testified that both Elizabeth and Rene Sr. have completed classes in Positive Parenting I and II and Active Parenting. Smith also testified that Elizabeth and Rene Sr. were in the process of taking Systematic Training for Effective Parenting and Raising Children in Difficult Times. According to Smith, Elizabeth and Rene Sr. had good attendance at the parenting classes.

{¶ 16} WCDJFS also presented the testimony of Jill Luikhart, a social worker, who testified that at one point Elizabeth and Rene Sr. had been making progress on their case plans; however, they both had experienced numerous setbacks. The setbacks started in December and included Rene Sr. being arrested for driving under the influence, Elizabeth being fired from her job, Elizabeth getting a speeding ticket and driving without insurance, and the van needing repairs because Elizabeth had hit a deer. Additionally, Luikhart testified that Elizabeth and Rene had lost their house due to financial difficulties.

{¶ 17} Luikhart also testified about several instances when Elizabeth and Rene Sr. had showed deficient parenting. For instance, Luikhart testified about Elizabeth getting appointments mixed up, and she described an incident when Elizabeth had taken more than the recommended dose of her prescription medication. In September 2004, according to Luikhart, Elizabeth admitted that she was not ready to have overnight visits with the children.

{¶ 18} During his supervised visits with Rene Jr., Rene Sr. did not control his son's behavior or even take steps to correct him. For example, Kim Baker, a unit support worker at WCDJFS who supervised visits with the children, testified that during one of the visits, Rene Jr. put a plastic bag on his head and Rene Sr. responded by laughing and lightly tugging on the bag to get it off Rene Jr.'s head. Baker also testified about a situation when Rene Jr. did not want his diaper changed, so Rene Sr. did not change his diaper and allowed Rene Jr. to return to his foster parents with a wet diaper.

{¶ 19} WCDJFS also admitted a certified copy of Elizabeth's May 30, 1997 conviction for child endangering. Luikhart testified that the conviction was based on an incident when Elizabeth left Juan in the care of relatives and those relatives left him home alone.

{¶ 20} Three witnesses testified at the hearing on Elizabeth's behalf, including Elizabeth's friend, Sara Pearson. Pearson testified that the children were clean, well fed, well cared for, and loved. However, on cross-examination, Pearson admitted that she had some concerns about the children being left home alone. Deb Schumm, Elizabeth's case manager from Fireland's Counseling and Recovery Center, testified that Elizabeth was cooperative and did the best she could to have her children returned. Elizabeth's sister, Lupe Gessner, also testified on Elizabeth's behalf. Gessner testified that she was the relative who had left Juan home alone and that she was the person responsible for Juan's being removed from Elizabeth's custody in 1997. Rene Sr. declined the opportunity to present any witnesses.

{¶ 21} Based upon the testimony and evidence presented at the permanent-custody hearing, the trial court granted WCDJFS's motion for permanent custody of Sophie, Sondra, Joel, and Rene Jr.

{¶ 22} It is from this judgment that Elizabeth appeals, setting forth five assignments of error for our review. Rene Sr. appeals the trial court's grant of permanent custody of Rene Jr., setting forth two assignments of error. For clarity of analysis, we will address Elizabeth and Rene Sr.'s assignments of error out of order and combine assignments of error where appropriate.

Appellant/Elizabeth Herrera

Assignment of Error No. I

The trial court erred as a matter of law in granting permanent custody of the minor children to the appellee.

Appellant/Elizabeth Herrera

Assignment of Error No. II

The trial court's decision to grant appellee's motion for permanent custody was against the manifest weight of the evidence.

Appellant/Rene Lopez Sr.

Assignment of Error No. II

The trial court's decision to grant the department's motion for permanent custody was against the manifest weight of the evidence.

{¶ 23} In her second assignment of error, Elizabeth asserts that the trial court erred by granting WCDJFS's motion for permanent custody because WCDJFS did not prove by clear and convincing evidence that she should have her parental rights terminated. As a basis for her argument, Elizabeth asserts that the children could have been returned to her within a reasonable time period, that she has made significant progress with her case plan, and that she has remedied the conditions that caused her children to be removed from the home. Rene Sr. argues in his second assignment of error that the trial court must consider whether a child can be placed with either parent in a reasonable time under R.C. 2151.414(E), that he has substantially complied with the requirement of the case plan, and that he just needed more time to reunite with his son.

{¶ 24} In Elizabeth's first assignment of error, she argues that the trial court must consider and discuss all of the best-interest-of-the-children factors in R.C. 2151.414(D). Specifically, Elizabeth argues that the trial court failed to consider the children's need for permanent placement and whether that can be achieved without a grant of permanent custody under R.C. 2151.414(D)(4). Elizabeth further argues that the trial court only briefly discussed the interactions of the children with their parents and foster care providers under R.C. 2151.414(D)(1).

Moreover, Elizabeth argues that the trial court only briefly discussed the children's wishes and did not consider the children's wishes under R.C. 2151.414(D)(2).

{¶ 25} In deciding these issues, we first note that "parents have a fundamental liberty interest in the care, custody, and management of their children." *In re Shaeffer Children* (1993), 85 Ohio App.3d 683, 689, 621 N.E.2d 426, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. Consequently, "the termination of parental rights is an alternative of last resort." *In re Capasso,* 3d Dist. Nos. 5–04–36, 5–04–37, 5–04–38, and 5–04–39, 2005-Ohio-1601, 2005 WL 742847, at ¶ 6.

{¶ 26} Pursuant to R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to a proper moving agency if

the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶ 27} In the case sub judice, the trial court granted WCDJFS temporary custody of the children on September 26, 2003. WCDJFS filed its motion for permanent custody on February 22, 2004. The children were continuously in the custody of WCDJFS throughout the foregoing proceedings. Thus, the children were in the temporary custody of WCDJFS for more than 12 months out of a consecutive 22–month period under R.C. 2151.414(B)(1)(d).

{¶ 28} This court has previously found that a determination of whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent pursuant to R.C. 2151.414(E) is required only if proceeding on the basis of R.C. 2151.414(B)(1)(a). *In re Smith,* 3d Dist. No. 9–04–35, 2005-Ohio-149, 2005 WL 91639, at ¶ 45. This court further found that

under R.C. 2151.414(B)(1)(b) through (d), the trial court is required only to determine whether the grant of permanent custody is in the best interests of the child. Id.

{¶ 29} Since the children in the present case were in the temporary custody of WCDJFS for more than 12 months out of a consecutive 22–month period under R.C. 2151.414(B)(1)(d), the trial court was required only to determine the best interests of the children by clear and convincing evidence. See R.C. 2151.414(B)(1); *Smith* at ¶ 45.

{¶ 30} Clear and convincing evidence is " 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal.*' " (Emphasis sic.) *Smith,* 3d Dist. No. 9–04–35, 2005-Ohio-149, 2005 WL 91639, at ¶ 36, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118.

{¶ 31} In determining the best interests of the child, the trial court must consider the specific factors listed in R.C. 2151.414(D), including:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 32} In the case sub judice, the trial court found that the children had bonded with their parents, each other, and their foster parents under R.C. 2151.414(D)(1). Although the trial court recognized that Elizabeth and Rene Sr. love their children, the trial court also recognized that the children resisted visitations with Elizabeth and Rene Sr. The trial court further found that the children had chaotic interactions with Rene Sr. and Elizabeth, but were calm when with their foster parents. In addition, the trial court found that the foster parents manage the

children's schedules and provide them with structure and love; and in return, the children show their foster parents trust and affection.

{¶ 33} In determining the best interests of the children, the trial court must also consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(2).

{¶ 34} In the case sub judice, the trial court found that "[w]hile the children were too young to express their wishes concerning their placement pursuant to R.C. Section 2151.414(D)(2) their actions give insight as to their preferences." The trial court then stated, "The children reportedly tried to thwart visitations with Elizabeth and Rene by hiding themselves and/or jackets when time to go. After visits they were ready to leave and would be (after the unsupervised visits with Rene and Elizabeth) extremely hungry." Further, the trial court noted that the children had special needs due to developmental delays and sexual abuse.

{¶ 35} In *In re Lane,* this court examined the issue of the children's wishes under R.C. 2151.414(D)(2). *In re Lane,* 3d Dist. Nos. 9–03–61 and 9–03–62, 2004-Ohio-2798, 2004 WL 1192087, at ¶ 45–46. *Lane* held that any error by the trial court and the guardian ad litem in failing to question the children regarding their wishes was harmless error based upon the circumstances of that case, including the testimony of the mother and case worker indicating the children's possible desires to live with their mother, the children's lack of maturity, and the overwhelming evidence that the grant of permanent custody was in the best interest of the children. Id. However, in that decision, we noted, "[T]he trial court and/or the guardian ad litem would normally be well advised to more specifically address the wishes of the children." Id. at ¶ 46.

{¶ 36} In the present case, there is no testimony indicating what the children's wishes were regarding permanent custody. While the guardian ad litem's report states that Sophie has anger toward her mother, the report does not discuss Sophie's wishes regarding custody. The guardian ad litem's report and testimony do not contain any references to the children's wishes or any indication that the children lacked the maturity to indicate their wishes. Furthermore, there is no indication in the record that the trial court interviewed the children in order to determine their level of maturity before it concluded that the children were too young to express their wishes.

{¶ 37} At the time of the permanent-custody hearing, Sophie was five years old and was arguably capable of expressing her wishes. Although there is some indication that Sophie may have been sexually abused when she was younger, we could find no evidence on the record that Sophie had any developmental delays or lacked the maturity to express her wishes. In fact, no one

testified about the level of Sophie's maturity. Consequently, we hold that the trial court's finding that Sophie was too young to express her wishes was not supported by clear and convincing evidence.

{¶ 38} However, at the time of the permanent-custody hearing, Sondra and Joel were three years old and Rene Jr. was two. At the permanent-custody hearing, Anne Denman testified that Sondra had language and fine motor delays, Joel had language and gross motor delays, and Rene Jr. had language delays. Given Sondra, Joel, and Rene Jr.'s young ages and the evidence that they had language delays, we find that there is clear and convincing evidence to support the trial court's findings that Sondra, Joel, and Rene Jr. were too young to express their wishes.

{¶ 39} The trial court also considered the best interests of the children under R.C. 2151.414(D)(3) and (4). The trial court noted the children's custodial history and found that the children had been in the continuous custody of WCDJFS for over 16 consecutive months. The trial court also considered the children's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody." R.C. 2151.414(D)(4). The trial court stated that the children "should not have to wait any longer for a legally secure placement." The trial court further found that "[t]he Department made more than reasonable efforts to assist these parents to remedy all the ills with which they were faced so as to allow the children to return home, but despite all the support and services provided the child(ren) cannot return home because of the faults or inadequacies of his or her parent." Accordingly, we find that the trial court considered the children's best interests under R.C. 2151.414(D)(3) and (4).

{¶ 40} Elizabeth and Rene Sr. both argue that they have made significant progress with their case plans and have remedied the conditions that led to the removal of the children. Elizabeth and Rene Sr. further argue that the children were removed from the home because Juan placed two of the children in a dryer and turned it on, and that condition was remedied when Elizabeth relinquished custody of Juan.

{¶ 41} While there is some evidence that Elizabeth and Rene Sr. have taken steps to comply with the case plan, there is significant evidence that both parents remain unable to provide the structure and stability their children need. Moreover, the record reflects that the children were removed from the home not only because of Juan's conduct but also because of the parents' poor decision-making, and there is evidence that both Elizabeth and Rene Sr. continue to make poor decisions.

{¶ 42} After reviewing the entire record, we find that the trial court's findings are supported by clear and convincing evidence regarding the grant of permanent custody to WCDJFS of Sondra, Joel, and Rene Jr. Elizabeth's second assignment of error in regard to Sondra, Joel, and Rene Jr. and Rene Sr.'s second assignment of error in regard to Rene Jr. are overruled. However, since the trial court's finding regarding Sophie's wishes was not supported by clear and convincing evidence, we must sustain Elizabeth's second assignment of error concerning the trial court's grant of permanent custody of Sophie.

Appellant/Elizabeth Herrera

Assignment of Error No. IV

The trial court erred in failing to appoint an attorney for each of the children.

{¶ 43} In her fourth assignment of error, Elizabeth asserts that the trial court erred by not appointing independent legal counsel to advocate for the children.

{¶ 44} The Ohio Supreme Court has held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus. *Williams* found that "courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." Id. at ¶ 17. Consequently, we must determine whether the "certain circumstances" that would entitle a child to independent legal counsel were present in this case.

{¶ 45} In the case sub judice, the record does not contain any indication that the trial court determined the wishes of Sophie, who was five years old at the time of the permanent-custody hearing and arguably capable of expressing her wishes. Therefore, we are unable to determine whether she would be entitled to independent legal counsel. If the trial court determines on remand that Sophie's wishes regarding custody strongly conflict with the guardian ad litem's opinion, then she may be entitled to independent legal counsel.

{¶ 46} However, we find no error in the fact that the trial court did not appoint independent legal counsel for Sondra, Joel, and Rene Jr. During the proceedings, Sondra and Joel were represented by an attorney. While the same legal counsel represented both Sondra and Joel, there is no evidence on the record that their interests conflicted. We find that the trial court did not err by not appointing an attorney for Rene Jr., since he was only two years old at the

time of the permanent-custody hearing and was incapable of expressing his wishes.

### Appellant/Elizabeth Herrera

### Assignment of Error No. III

The trial court erred in failing to appoint a separate guardian ad litem for the children.

{¶ 47} In her third assignment of error, Elizabeth claims that the trial court erred by failing to appoint a separate guardian ad litem for each of the four children, because their interests conflicted with the best interests of Juan, whom the guardian ad litem was also representing. As a basis for this argument, Elizabeth points to the guardian ad litem's testimony that she never believed that Juan should be reunited with his siblings. We find that Elizabeth's argument is without merit.

{¶ 48} The record contains a letter written by Connie Crego–Stahl, a professional clinical counselor. In her letter, Stahl indicated that Juan had symptoms of reactive attachment disorder, and she said that if he were "return[ed] to his biological family, Juan might become a danger to himself and/or family members." Given Stahl's professional opinion, we find clear and convincing evidence that it was not in either Juan's or his siblings' best interests to be reunited. Consequently, there was no conflict of interest by one guardian ad litem representing the interests of Juan, Sophie, Sondra, Joel, and Rene Jr. Elizabeth's third assignment of error is, therefore, overruled.

### Appellant/Elizabeth Herrera

### Assignment of Error No. V

O.R.C. 2151.414(B)(1)(d) is unconstitutional as applied here.

{¶ 49} In her fifth assignment of error, Elizabeth maintains that while R.C. 2151.414(B)(1)(d) is constitutional on its face, it is unconstitutional as applied to the facts in this situation. Elizabeth further argues that although she did not object to the constitutionality of the statute at trial, this court is not "foreclosed" from considering the challenge on constitutional grounds. In opposition, the appellee argues that Elizabeth waived that argument for purposes of appeal.

{¶ 50} The Ohio Supreme Court has held that a "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore *need not* be heard for

the first time on appeal." (Emphasis added.) *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

{¶ 51} In the case sub judice, Elizabeth concedes that she did not challenge the constitutionality of the statute at trial. Under the facts and circumstances of this case, we choose not to decide the constitutional issues presented by Elizabeth for the first time on appeal. Consequently, this assignment of error is overruled.

Appellant/Rene Lopez Sr.

Assignment of Error No. I

Appellant's due process rights were violated when the trial court terminated appellant's parental rights by finding the department used reasonable efforts.

{¶ 52} In his first assignment of error, Rene Sr. argues that his due-process rights were violated when WCDJFS failed to use reasonable efforts to reunify him with his child. As a basis for his argument, Rene Sr. asserts that WCDJFS failed to take his inability to speak English into account when developing his case plan and failed to provide him with documents in Spanish. Rene Sr. claims that WCDJFS attempted to shift its burden to make reasonable efforts at reunification by demanding that he take English classes. Rene Sr. contends that WCDJFS relied on Elizabeth to act as his interpreter from August 2004 through January 2005, even though she had been diagnosed as having attention deficit disorder and inability to multitask and had her own case plan to follow. Rene Sr. further maintains that when WCDJFS provided him with an interpreter, there were no procedures in place to determine whether the interpreter was qualified and the translations were accurate.

{¶ 53} The Ohio Supreme Court has determined that "[p]arents have a 'fundamental liberty interest' in the care, custody, and management of the child." *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. "The rights and interests of a natural parent are not, however, absolute: where a court finds that permanent custody is appropriate under circumstances of a particular case and all due process safeguards have been followed, whatever residual rights a parent may have are properly divested." *In re Leveck*, 3d Dist. Nos. 5–02–52, 5–02–53, and 5–02–54, 2003-Ohio-1269, 2003 WL 1205082, at ¶ 6.

{¶ 54} This court has previously stated, "R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home." *In re Smith*, 2005-Ohio-149, 2005 WL 91639, at ¶ 49. The standard is whether the agency used reasonable efforts and not whether the agency did everything possible. *In re Leveck*, 2003-Ohio-1269, 2003 WL 1205082, at ¶ 10.

{¶ 55} In the case sub judice, Rene Sr. spoke only Spanish. As a result of Rene Sr.'s inability to communicate in English, WCDJFS provided him with an interpreter named Lupe Garza. Garza began interpreting for Rene Sr. in September 2003 and stopped doing so sometime in August 2004. The record indicates that from August 2004 to February 2005, WCDJFS did not use an agency interpreter, but relied on Elizabeth for translations. In February 2005, WCDJFS started using Maria Renteria as Rene Sr.'s interpreter. Rene Sr. had Renteria's phone number and could contact her at any time to interpret for him. Rene Sr. was also represented by Spanish-speaking counsel whom the trial court appointed in October 2003.

{¶ 56} After reviewing the entire record, we find that WCDJFS used reasonable efforts to reunite Rene Sr. with his son. WCDJFS recognized Rene Sr.'s language barrier and used reasonable efforts to obtain interpreters for Rene Sr. Although WCDJFS relied on Elizabeth as an interpreter for a period of a few months, Rene Sr. had Spanish-speaking legal counsel throughout the time period during which Elizabeth acted as an interpreter. Further, WCDJFS did not demand that Rene Sr. take English classes, but, rather, recommended that he take English classes. While we think it would have been a better practice to provide a copy of the case plan written in Rene Sr.'s native language, Rene Sr. was provided with a Spanish-speaking attorney throughout the proceedings and had access to interpreters.

{¶ 57} After reviewing the record, we could find no evidence that the interpreters were unqualified. There is also no evidence on the record that René Sr. was unable to understand the various interpreters' translations. Rene Sr.'s assignment of error is, therefore, overruled.

{¶ 58} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as it relates to Sophie Herrera, case No. 16–05–12, and remand the matter for further proceedings consistent with this opinion. However, we affirm the judgments of the trial court in regard to Rene Lopez Jr., case No. 16–05–10; Joel Herrera, case No. 16–05–13; and Sondra Herrera, case No. 16–05–14.

Judgment reversed
and cause remanded in case
No. 16–05–12.

Judgments affirmed in case Nos.
16–05–10, 16–05–13,
and 16–05–14.

ROGERS and SHAW, JJ., concur.