[Cite as *In re B.B.*, 2011-Ohio-2679.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| B.B., L.B., J.B. and A.C. | : | Appellate Case No. 2010-CA-68 |
| | : | |
| | : | Trial Court Case Nos. N40828 |
| | : | N40869 |
| | : | N40920 |
| | : | |
| | : | (Juvenile Appeal from |
| | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of June, 2011.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by ELIZABETH A. ELLIS, Atty. Reg. #0074882, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
        Attorneys for Appellee, State of Ohio

JENNIFER S. GETTY, Atty. Reg. #0074317, 46 East Franklin Street, Centerville, Ohio 45459
        Attorney for Appellant, I.C.

ALAN COLLINS, Atty. Reg. #0062915, 864 Trent Close, Springfield, Ohio 45505
        Attorney for Minor Children

ROBERT HENDRIX, Atty. Reg. #0037351, 87 South Progress Drive, Xenia, Ohio 45385
        Attorney for Appellee, L.B., Sr.

SUE RODERICK, 2100 Greene Way Boulevard, Xenia, Ohio 45385
        Guardian Ad Litem

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Appellant I.C. appeals the judgment of the Greene County Juvenile Court granting permanent custody of A.C. and J.B. to the Greene County Children Services Board. We affirm.

## I. The Children

{¶ 2}  A.C., born July 14, 2005, and J.B., born January 3, 2009, are the daughters of I.C. Their paternity is unknown. The girls have an older brother, L.B., born May 2, 2001, and an older sister, B.B., born November 13, 1999, who are the children of I.C. and L.B., Sr. In December 2008, B.B., L.B., and A.C. were removed from their home and placed in the temporary custody of Children Services, which has been involved with the family since 2003. The reasons they were removed were primarily I.C.'s and L.B., Sr.'s drug abuse that has resulted in their failure to be adequate parents. On the morning of January 3, 2009, J.B. was born with a high level of cocaine in her system. Later that day, J.B., too, was placed in Children Services' temporary custody. The following month, the children were adjudicated dependent. See R.C. 2151.04 (defining "dependent child"). The children were placed in foster homes, and Children Services developed a case plan for the family. The plan required I.C. to stop using drugs, be assessed for substance abuse and mental heath treatment and comply with any recommendations, submit to random drug screens, complete parenting classes, and visit with her children.

{¶ 3}  Nine months later, in November 2009, Children Services moved to secure permanent custody of the children. A hearing took place in the juvenile court at which Children Services presented the testimony of several witnesses. The testimony revealed that, since she lost custody of her children, I.C. had failed to complete treatment for drug abuse,

despite being assessed and reassessed multiple times and each time being recommended for treatment. Testimony further revealed that random drug screens over the preceding 14 months showed that I.C. continued to use drugs. I.C. had, though, completed parenting classes and visited with her children. The result of this first motion for permanent custody was that the juvenile court denied Children Services' motion, determining that permanent custody was not in the children's best interest. While I.C. had not fully complied with her case plan, said the court, she had achieved some of the plan's goals, and she was interested in achieving full compliance. The court said that it would give I.C. an opportunity to demonstrate her full commitment to her children.

**{¶ 4}** Two months later, in May 2010, Children Services again moved to secure permanent custody. A hearing took place in September 2010. At the start of the hearing, the parties agreed that, in making its determination, the court could consider the evidence that was presented at the March hearing. Children Services then presented the testimony of several witnesses. J.B.'s foster mother, K.S., testified about the extent of J.B.'s significant medical issues. The court heard that J.B. has serious vision impairments. Her physical development is delayed, and she receives physical therapy each week. J.B.'s speech is also delayed, and she receives speech therapy each week. The court also heard about J.B.'s feeding problems stemming from a hypersensitivity of the mouth and a hyperactive gag reflex. K.S. said that she must carefully monitor J.B.'s food intake to ensure that she gets enough calories each day. For her feeding problems, J.B. receives occupational therapy each week and takes medication to help stimulate her appetite, which K.S. gives her twice daily. K.S. testified that, if the opportunity arose, she and her family would be interested in adopting J.B.

**{¶ 5}** The court also heard testimony from I.C.'s caseworker and social worker. They

testified that, since the first permanent-custody hearing, I.C. had continued to test positive for drugs. In the six months between the hearings, I.C. was clean only three times. They further testified that I.C. failed to submit to a majority of the drug screens that Children Services tried to administer. A case aide testified that on at least two occasions I.C. simply refused to be screened and admitted that a drug test would be positive. As recently as the month before the September hearing, I.C.'s caseworker testified, she submitted to only four of the nine drug screens requested. And all four came back positive–one showing that I.C. had recently used cocaine. At the time of the hearing, I.C. was pregnant with her fifth child.

{¶ 6}   The court further heard that I.C. had still not completed treatment for her drug abuse. Since the March hearing, I.C. was assessed twice more at TCN Behavioral Health Center, and each time she was recommended for treatment but never completed it. Also, I.C. again got into Women's Recovery Center and was supposed to be admitted on August 25, 2010. She was not admitted, though, because she had tested positive for a drug cocktail of benzodiazapine, marijuana, and cocaine.

{¶ 7}   There was also testimony that I.C.'s drug abuse has resulted in a decrease of visits with her children. Sometimes she did not show up. More often, the caseworker canceled visits because I.C. had tested positive for drugs.

{¶ 8}   This time, the juvenile court granted Children Services' motion, at least in part. The court determined that permanent custody was not in the best interest of B.B. and L.B. and with respect to them denied the motion. But permanent custody was in the best interest of A.C. and J.B., the court determined, and it granted the agency's motion accordingly. I.C. appealed and now presents two assignments of error.

## II. Permanent Custody

A. *"Reasonable time"*

{¶ 9}  In her first assignment of error, I.C. argues that the juvenile court abused its discretion by determining that A.C. and J.B. could not be placed with her within a "reasonable time," pursuant to R.C. 2151.414(B)(2). Division (B)(2) of section 2151.414 does not apply in this case.

{¶ 10} Division (B)(2) of section 2151.414 states that a juvenile court must grant permanent custody of a child to the state if the court determines that the child either cannot be placed with a parent within a reasonable time or should not be placed with either parent, and determines that permanent custody is in the child's best interest. But division (B)(2) applies only "[w]ith respect to a motion made pursuant to division (D)(2) of section 2151.413." R.C. 2151.414(B)(2). Division (D)(2) of section 2151.413 directs the state to move for permanent custody if a juvenile court determines that reunifying the child with the parent is no longer the goal. Here, such a determination was not made by the juvenile court before the state filed its motion. We note that the court did not say that it was acting pursuant to division (B)(2). Indeed, while some of the decision's language suggests such a determination, the court never said that A.C. and J.B. cannot be placed with I.C. within a reasonable time or should not be placed with her.

{¶ 11} Rather, the court acted under division (B)(1) of section 2151.414, the division on which Children Services expressly based its motion. Division (B)(1) provides that a court may grant permanent custody to the state if the court determines, by clear and convincing evidence, that permanent custody is in the child's best interest "...*and* that *any* of the following apply:..." (Emphasis added)  This section requires the court to determine, again by clear and

convincing evidence, that at least one of four enumerated circumstances applies. Although the first circumstance in (B)(1)(a) requires, like division (D)(2), that a parent placement cannot be made within a "reasonable time," that "reasonable time" for parental placement only applies if the child has *not* been in the temporary custody of a public services agency for 12 or more months of a consecutive 22-month period. The juvenile court expressly found (a finding that is supported by the record) that the children in this case *have* been in Children Services' temporary custody for more than 12 months of the prior 22-month period. Therefore the circumstance of R.C. 2151.414(B) that applies here is, the fourth, (B)(1)(d). That section provides for permanent custody to be determined in the child's best interest if the child *has* been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period, without the necessity of a finding that parental placement cannot be accomplished in a "reasonable time."

{¶ 12} Therefore, as the state contends, the only question in this case is whether permanent custody is in the children's best interest. See *In re J.W.*, Franklin App. Nos. 06AP-864, 06AP-1062, 06AP-875, 2007-Ohio-1419, at ¶15 ("Because the record supports the trial court's decision to proceed under R.C. 2151.414(B)(1)(d), the trial court did not need to determine whether the child can or should be placed with either parent after a reasonable time."), citing *In re Lopez*, 166 Ohio App.3d 688, 2006-Ohio-2251, at ¶27-29 ("[U]nder R.C. 2151.414(B)(1)(b) through (d), the trial court is required only to determine whether the grant of permanent custody is in the best interests of the child.") (Citation omitted.).

{¶ 13} The first assignment of error is overruled.

B. *"Best interest" of the children*

{¶ 14} In the second assignment of error, I.C. argues that the juvenile court's determination that permanent custody is in A.C.'s and J.B.'s best interest is contrary to the manifest weight of the evidence. We will not overturn a court's grant of permanent custody to the state because it is contrary to the manifest weight of the evidence "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established." *In re A.U.*, Montgomery App. No. 22287, 2008-Ohio-187, at ¶9 (Citations omitted.).

{¶ 15} In determining what is in the best interest of the child, the juvenile court must consider all relevant factors, including, but not limited to, these: (1) the child's interaction and interrelationship with parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, (3) the child's custodial history, including whether the child has been in the temporary custody of a public children services agency for 12 or more months of a consecutive 22-month period, and (4) the child's need for a legally secure permanent placement and whether such a placement can be obtained without granting permanent custody. R.C. 2151.414(D)(1)(a) through (d). In addition, the court must consider whether the parent has been convicted of certain offenses, has withheld medical treatment or food, has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment or refused to participate in further treatment two or more times, has abandoned the child, or has had parental rights to a sibling of the child involuntarily terminated. R.C. 2151.414(D)(1)(e) (referring to the factors in R.C. 2151.414(E)(7) through (11)).

{¶ 16} In this case, the testimony showed I.C. continued to abuse drugs and that abuse has affected her ability to care for her children. The developed case plan had required I.C. to

abstain from drug use, to be assessed for substance abuse and mental health treatment and comply with any treatment recommendations, to submit to drug screens, to complete parenting classes, and to visit with the children. In the almost two years since the children were removed, I.C. completed only parenting classes. She failed to complete substance-abuse treatment, despite the efforts of Children Services to help. She failed to submit to drug screens. Those screens to which she did submit revealed that I.C. continued to use drugs even though she was pregnant with another child, and even though she had been told about J.B.'s serious medical issues. The effect of her  continued drug abuse on her ability to parent her children is evident from the failure to even visit with her children on many occasions.

{¶ 17} In addition to relying on the professional testimony and opinions in support of permanent custody, the juvenile court considered the relevant statutory factors. The court found that during the visits she did have with A.C., I.C. interacted appropriately with her, and appeared to have a positive relationship with her. The court recognized that A.C. has expressed her wish to be reunited with I.C. The court noted that J.B.–too young to express her wishes–has lived in the same foster home since she was three days old and has become integrated with the family. The court further noted that she has a variety of special physical and medical needs that her foster parents are making sure to meet. Furthermore, the foster parents are interested in adopting J.B. The court found that there are no suitable relatives with whom the children could be placed. And, as noted above, the court found that the children have been in Children Services' temporary custody for over 12 of the past 22 months.

{¶ 18} I.C. has a significant drug-abuse problem that has affected her parenting, and, said the court, she has not shown any commitment to resolve it. Despite Children Services' reasonable case plan and diligent efforts to help her, the court said, I.C. has failed

continuously and repeatedly to substantially remedy the conditions that lead to the children's being removed from her home. The juvenile court concluded that clear and convincing evidence demonstrated that it is in the best interest of A.C. and J.B. to be placed in Children Services' permanent custody. We note that, while the court did not find the same for B.B. and L.B., the court did order that Children Services no longer try to reunite them with I.C.. Rather, the court ordered that the case plan be amended to focus efforts solely on reunifying B.B. and L.B. with their father, L.B., Sr.   The court said that the plan should include the goal that L.B., Sr. have stable housing without the presence of I.C.

{¶ 19} We conclude that the juvenile court had sufficient evidence to support its determination that permanent custody to Greene County Children Services was in A.C.'s and J.B.'s best interest.

{¶ 20} The second assignment of error is overruled.  The judgment of the juvenile court is Affirmed.

. . . . . . . . . . . .

FAIN, J., and FROELICH, J., concur.


Copies mailed to:

Stephen K. Haller
Elizabeth A. Ellis
Jennifer S. Getty
Alan Collins
Robert Hendrix
Sue Roderick
Hon. Robert W. Hutcheson