[Cite as *In re D.V.*, 2022-Ohio-1024.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


IN RE: D.V. AND J.A.

:      APPEAL NOS. C-210580
                             C-210624

:      TRIAL NO. F-17-002227Z

:

:      *O P I N I O N.*


Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Reversed and case Remanded in C-210624; Affirmed in C-210580

Date of Judgment Entry on Appeal: March 30, 2022


*Christopher P. Kapsal,* for Appellant Mother,

*Roger W. Kirk,* for Appellant Father,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Patsy Bradbury,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Kimberly Thomas,* Guardian Ad Litem for D.V. and J.A.

**BOCK, Judge.**

{¶1} In these consolidated appeals, appellants mother and father challenge the juvenile court's judgment granting permanent custody of D.V. and J.A. to the Hamilton County Department of Job and Family Services ("HCJFS"). For the following reasons, we reverse the juvenile court's judgment with respect to mother in the appeal numbered C-210624 and remand that case to the juvenile court for proceedings consistent with this opinion. We affirm the juvenile court's termination of father's parental rights in the appeal numbered C-210580.

## I.      Facts and Procedure

{¶2} Mother is the biological mother of J.A.[1] In September 2017, mother gave birth to father's son, D.V. Days before D.V.'s birth, father was arrested and charged with aggravated menacing in violation of R.C. 2903.21, and assault in violation of R.C. 2903.13. The charges were later dismissed. In October 2017, HCJFS filed a complaint for temporary custody of J.A. and D.V. The complaint alleged that the children were dependent under R.C. 2151.04. As the case was pending in the juvenile court, father was arrested in December 2019 and charged with domestic violence under R.C. 2919.25. Mother was granted a domestic-violence protection order against father. Ultimately, the charge and order were dismissed.

{¶3} In January 2018, the juvenile court adjudicated J.A. and D.V. dependent and granted HCJFS temporary custody of the children. The children were placed in foster care. HCJFS developed separate case plans for mother and father. By June, the magistrate found that mother and father had made "satisfactory progress."

---

[1] R.B. is J.A.'s biological father. Initially, R.B. appealed the juvenile court's judgment in the appeal numbered C-210625, but R.B. voluntarily dismissed his appeal.

{¶4}    In September 2018, the court awarded mother and father legal custody of J.A. and D.V., and granted HCJFS an order of protective supervision. Father lived with his mother ("grandmother"), and the children moved into grandmother's house.

{¶5}    Then, in December 2018, father was arrested for a third time and charged with domestic abuse, a violation of R.C. 2919.25. And again, the charges were dismissed. In January 2019, J.A. and D.V. were placed in the emergency custody of HCJFS and returned to foster care. In March 2019, the juvenile court adjudicated the children dependent under R.C. 2151.04, for a second time. And HCJFS reinstated father's case plan. At the May 2019 disposition hearing, father agreed to continue HCJFS's temporary custody of the children.

{¶6}    In the fall of 2019, father moved for permanent custody of J.A. and D.V. In response, HCJFS moved for permanent custody of the children under R.C. 2151.414. The children's guardian ad litem ("GAL") submitted a report to the juvenile court recommending awarding HCJFS permanent custody of the children. The yearlong permanent-custody hearing began in March 2020. Numerous witnesses testified, including HCJFS caseworkers, J.A.'s therapist, mother, and father. The parties submitted numerous case plans and court documents into evidence.

{¶7}    Following the hearing, the magistrate found that granting permanent custody of the children to HCJFS was in J.A.'s and D.V.'s best interest under R.C. 2151.414(D). The juvenile court adopted the magistrate's decision over the objections of mother and father. Relevant here, the juvenile court found that "[t]he wishes of the children were not expressed to the Court."

{¶8}    Mother appeals the termination of her parental rights to J.A. and D.V. in the appeal numbered C-210624. Father appeals the termination of his parental rights to D.V. in the appeal numbered C-210580.

## II.     Law and Analysis

{**¶9**}    A parent's right to the custody of their child is essential and paramount. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 10, quoting *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). But it is well settled that parental rights may be circumscribed if doing so is in the best interest of the child. *In re D.A.* at ¶ 11, quoting *In re Cunningham,* 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{**¶10**}   In Ohio, R.C. 2151.414 authorizes a juvenile court to terminate the legal relationship between a parent and child. A state agency seeking to terminate the rights of parents must produce clear and convincing evidence that satisfies the statute's two-part test. R.C. 2151.414(B)(1). The parties focus their arguments on the statute's best-interest inquiry in the second prong. *See* R.C. 2151.414(D)(1).

{**¶11**}   The juvenile court must consider all factors relevant to the best interest of the child. *Id.* And the Ohio General Assembly has identified five statutory factors in R.C. 2151.414(D)(1) that the juvenile court must consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of [R.C. 2151.414] apply in relation to the parents and child.

{¶12} A "child's best interest is a fluid concept, as it involves the child's continually-changing need for appropriate care." *In re D.M.*, 1st Dist. Hamilton No. C-200043, 2020-Ohio-3273, ¶ 47, quoting *In re G.L.S.*, 9th Dist. Summit No. 28874, 2018-Ohio-1606, ¶ 16.

{¶13} In determining the best interest of a child, " '[n]o single factor is given greater weight or heightened significance.' " *In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, ¶ 35, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. Yet, the juvenile court must "consider" these factors, meaning the court must "think about [each factor] with a degree of care or caution." *In re A.M.,* Slip Opinion No. 2020-Ohio-5102, ¶ 25, quoting *State v. Thompson*, 92 Ohio St.3d 584, 588, 752 N.E.2d 276 (2001), fn. 1, quoting *Webster's Third New International Dictionary* 483 (1986). " '[T]here must be some indication on the record that all of the necessary factors were considered.' " *In re N.G.*, 1st Dist. Hamilton Nos. C-130684 and C-130685, 2014-Ohio-720, ¶ 12, quoting *In re G.B.*, 10th Dist. Franklin No. 04AP-1024, 2005-Ohio-3141, ¶ 17. This court has repeatedly encouraged the juvenile court to provide a "careful delineation of its reasoning for each of the R.C. 2151.414(D)(1)(a) through (d) factors." *In re D.G.*, 2021-Ohio-429, 168 N.E.3d 43, ¶ 11 (1st Dist.).

### A. Mother's Appeal in C-210624

{¶14} In the appeal numbered C-210624, mother challenges the juvenile court's award of permanent custody of J.A. and D.V. to HCJFS. In her first assignment of error, she argues that the juvenile court failed to consider J.A.'s wishes in its best-interest analysis as required by R.C. 2151.414(D)(1)(b).

### 1. *Mother Preserved the Issue on Appeal*

{¶15} As an initial matter, HCJFS and the GAL contend that mother failed to present this argument to the magistrate or in her objections filed with the juvenile court, and therefore, waived all but plain error.

{¶16} Generally, our review is limited to issues presented to the trial court. *Manchise v. Ionna*, 1st Dist. Hamilton No. C-120874, 2013-Ohio-3612, ¶ 12, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). Juv.R. 40(D)(3)(b)(iv) provides, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Plain error applies to "issues which could easily have been raised before and determined by the trial court." *Cable Busters, LLC v. Mosley*, 1st Dist. Hamilton No. C-190364, 2020-Ohio-3442, ¶ 7, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997).

{¶17} Mother sufficiently preserved the issue. She filed timely objections to the magistrate's decision. While the magistrate did not identify the child's wishes, he acknowledged that the children's GAL supported awarding HCJFS permanent custody. This suggests that the magistrate considered the children's wishes. Mother challenges the juvenile court's failure to consider J.A.'s wishes. When the magistrate issued his findings, the issue did not exist for her to object.

{¶18} The trial court conducted an independent review of the record and entered its findings, including its explicit admission that it had not considered the children's wishes. Mother now challenges the finding of the juvenile court. A similar objection requirement in Civ.R. 53(D)(3)(b) " 'appl[ies] to issues of fact or law the magistrate decided, and not to those that were decided by the court itself.' " *Kayrouz*

*v. Kayrouz*, 12th Dist. Butler No. CA2005-04-096, 2006-Ohio-149, ¶ 4, quoting *Cleveland v. Lancaster*, 2d Dist. Greene No. 02CA0123, 2003-Ohio-4976, ¶ 16. Given the similarities between Civ.R. 53(D)(3)(b) and Juv.R. 40(D)(3)(b), and the magistrate's presumed consideration of the children's wishes, there is no need to review mother's first assignment of error under a plain-error standard of review. *In re W.C.*, 2013-Ohio-153, 986 N.E.2d 572, ¶ 13 (12th Dist.).

### 2. *The Juvenile Court Failed To Consider J.V.'s Wishes*

**{¶19}** Turning to the merits, mother contends that R.C. 2151.414(D)(1)(b) requires consideration of a child's wishes when determining that child's best interest. According to mother, the juvenile court failed to consider those wishes and committed reversible error. We agree.

**{¶20}** The juvenile court must consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(1)(b). While the statute permits a GAL to convey the child's wishes to the juvenile court, a GAL's belief or report stating that permanent custody is in the best interest of a child is insufficient because the court must consider the child's wishes, not the GAL's. *See In re P. & H.*, 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 37; *In re Lopez*, 166 Ohio App.3d 688, 2006-Ohio-2251, 852 N.E.2d 1266, ¶ 36 (3d Dist.).

**{¶21}** The juvenile court found that "the wishes of the children were not expressed to the court." We agree with mother that the juvenile court's express failure to consider the wishes of J.A. in its best-interest analysis is a reversible error. *See In re H.M.*, 2014-Ohio-755, 9 N.E.3d 470, ¶ 30 (3d Dist.). While a court is not required to make specific findings or provide a written discussion of the statutory factors, the juvenile court "must consider each statutory factor, including the wishes of a child." *In*

7

*re A.M.,* Slip Opinion No. 2020-Ohio-5102, at ¶ 31. As such, the record must reflect some investigation into the child's wishes. *Id.* "A trial court ordinarily errs if it completely fails to address a child's wishes." *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶ 32. Here, the record indicates that the juvenile court failed to think about J.A.'s wishes with a degree of care or caution.

**{¶22}** In response, HCJFS suggests that J.A. was too young to express his wishes. Under R.C. 2151.414(D)(1)(b), a juvenile court must be mindful of the maturity of the children when considering their wishes. To be sure, "it may not be practical to [consider the child's wishes] when the child is too young to have or express a meaningful opinion." *In re S.M.* at ¶ 35. Yet, there is nothing in the record to support HCJFS's argument. *See In re Lopez* at ¶ 36. J.A. was eight-years-old when the hearing concluded. If necessary, the juvenile court may investigate J.A.'s maturity and ability to express his wishes in a meaningful way. *See id.* Next, the GAL argues that J.A.'s wishes were expressed to the juvenile court through mother's testimony. But "[t]estimony by a child's mother does not fulfill the requirements of R.C. 2151.414(D)(2) that a child's wishes be expressed directly by the child or the child's GAL." *In re Walling*, 1st Dist. Hamilton No. C-050646, 2006-Ohio-810, ¶ 23.

**{¶23}** We sustain mother's first assignment of error. A remand is necessary for consideration of J.A.'s wishes under R.C. 2151.414(D)(1)(b) in the analysis of J.A.'s best interest. The juvenile court found that J.A. is protective over his younger sibling and the two have a close bond. Because the court must consider J.A. and D.V.'s interactions and relationship pursuant to R.C. 2151.414(D)(1)(a) when it determines the best interests of both children, J.A.'s best interest is intertwined with D.V.'s best interest. When "the strongest bond the child has had is with [his] siblings, separating them would generally not be in their best interest." *In re A.W.,* 9th Dist. Lorain No.

8

08CA009366, 2009-Ohio-1827, ¶ 18, citing *In re A.C.,* 9th Dist. Wayne Nos. 02CA0053, 02CA0054 and 02CA0055, 2003-Ohio-2714, ¶ 44. Therefore, we reverse the termination of mother's parental rights to both J.A. and D.V.

{¶24} Mother also argues that the juvenile court was required to determine whether J.A. was entitled to independent counsel pursuant to *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. In her remaining assignments of error, she raises manifest-weight and sufficiency challenges to the juvenile court's decision. Because mother's R.C. 2151.414(D)(1)(b) argument is dispositive, we decline to address her remaining arguments and assignments of error. *See* App.R. 12(A)(1)(c). We remand mother's case to the trial court for further proceedings consistent with our analysis.

## B. Father's Appeal in C-210580

{¶25} Father challenges the juvenile court's decision in the appeal numbered C-210580, with a narrow focus on the grant of permanent custody of D.V. to HCJFS. Our analysis is limited to the facts relevant to father's custody of D.V. In his single assignment of error, father argues that the juvenile court's decision was against the manifest weight and sufficiency of the evidence.

{¶26} This court reviews a juvenile court's grant of permanent custody to determine if clear and convincing evidence supported its decision. *In re L.M.B.,* 1st Dist. Hamilton Nos. C-200033 and C-200044, 2020-Ohio-2925, ¶ 8, citing *In re A.B.,* 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. Clear and convincing evidence produces " ' "a firm belief or conviction as to the facts sought to be established." ' " *In re L.M.B.* at ¶ 8, quoting *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

9

{¶27} A challenge to the sufficiency of the evidence presents a question of law that we review de novo. *In re D.G.*, 2021-Ohio-429, 168 N.E.3d 43, at ¶ 8, quoting *In re A.B.* at ¶ 15, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11. In a sufficiency challenge, our analysis consists of an independent review of the record to determine if the evidence presented to the juvenile court was sufficient to satisfy R.C. 2151.414's clear-and-convincing standard. *In re D.G.* at ¶ 8, citing *In re J.W.*, 1st Dist. Hamilton No. C-190189, 2019-Ohio-2730, ¶ 13, quoting *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. In other words, a sufficiency argument challenges the adequacy of the evidence. *In re A.B.* at ¶ 15, citing *Eastley* at ¶ 11.

{¶28} Father limits his sufficiency argument to the juvenile court's finding that the termination of his parental rights was in D.V.'s best interest under R.C. 2151.414(D)(1). Specifically, his argument focuses on two statutory factors—D.V.'s interactions and interrelationships, and D.V.'s need for a legally secure placement.

{¶29} The juvenile court considered D.V.'s interactions and interrelationships under R.C. 2151.414(D)(1)(a), and found that father lacked a protective capacity and minimized the domestic-violence issues. The record contains sufficient evidence to support this finding. According to the record, father was arrested in September 2017 after he allegedly hit and threatened to shoot Mother just days before D.V.'s birth. In December 2018, he was arrested after he allegedly punched, kicked, and pushed mother following an argument at grandmother's house with the children in another room. Jasmine Elliot, a HCJFS case worker, testified that father threatened to harm mother and the children in 2019. Elliot believed that father minimized his violence. Father testified twice. At first, he denied hitting and threatening mother. To him, the incidents were merely "verbal" arguments.

**{¶30}** Turning to D.V.'s need for a legally secure placement under R.C. 2151.414(D)(1)(d), the juvenile court determined that this factor supported an award of permanent custody to HCJFS. A legally secure placement " 'encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.' " *In re P. & H.,* 1st Dist. Hamilton Nos. C-190309 and C-190310, 2019-Ohio-3637, at ¶ 42, quoting *Matter of K.W.,* 2018-Ohio-1933, 111 N.E.3d 368, ¶ 87 (4th Dist. 2018).

**{¶31}** Despite Father's completion of case-plan services, the juvenile court found that "the children were again removed only a few short months later again due to domestic violence issues" in grandmother's home. Father lives with grandmother and the evidence shows that his violence recurs in grandmother's house. Indeed, father testified that D.V. was in the house when he allegedly punched and kicked mother in 2018. This supports the court's finding that father was unable to provide a secure placement for D.V. Therefore, the evidence was sufficient to support the juvenile court's finding that terminating father's parental rights to D.V. was in D.V.'s best interest under R.C. 2151.414(D)(1).

**{¶32}** Father also argues that the juvenile court's decision to terminate his parental rights to D.V. was against the manifest weight of the evidence. In a manifest-weight challenge, we "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re A.B.,* 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, at ¶ 16, citing *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 12, and *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin,* 20 Ohio App.3d

172, 175, 485 N.E.2d 717 (1st Dist.1983). In our analysis, we are "mindful of the presumption in favor of the finder of fact." *In re A.B.* at ¶ 16, quoting *Eastley* at ¶ 12, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

**{¶33}** Father argues that he completed his case-plan services and addressed his domestic-violence issues. He testified that he learned from the case-plan services and he was not an aggressive person. But his testimony was inconsistent and contradictory—it undermined his credibility. Initially, he denied having threatened or attacked mother. Later, he admitted it and acknowledged that he misled the juvenile court in his earlier testimony. Father testified that he did not own a gun. But he was arrested in March 2021 for unlawful possession and transportation of a firearm. Father testified that he stopped smoking marijuana in 2014. Yet, he tested positive for marijuana in 2020. While he completed his case-plan services, two HCJFS employees observed no behavioral changes and remained concerned about father's anger.

**{¶34}** Two parent-coaching facilitators testified that father's visitations with D.V. were positive. But "we cannot reverse the trial court's judgment because it is merely contrary to some evidence." *In re A.B.* at ¶ 28. Rather, the juvenile court's decision "must be so contrary to the probative value of all the admissible evidence that was before the trial court that we can only conclude that the court lost its way and a manifest miscarriage of justice resulted." *Id.,* citing *Eastley* at ¶ 20-21, and *Thompkins* at 387. After a review of the evidence in the record, we are not persuaded that the juvenile court's judgment was against the manifest weight of the evidence. Therefore, we overrule father's sole assignment of error.

### III.    Conclusion

{¶35}   Because the juvenile court failed to consider J.A.'s wishes as required by R.C. 2151.414(D)(1)(b), we reverse the juvenile court's judgment with respect to mother in the appeal numbered C-210624 and remand that case to the juvenile court for further proceedings consistent with this opinion. In the appeal numbered C-210580, we affirm the juvenile court's judgment terminating father's parental rights to D.V.

Judgment accordingly.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.